647 A.2d 162

MERYL SZCZEPANSKI, PLAINTIFF–APPELLANT, v. NEWCOMB HOSPITAL MEDICAL CENTER, INC., AND FAVORITE NURS-ES, INC., DEFENDANTS–RESPONDENTS, AND ELMER MATTIOLI, THOMAS RAYNOR, ELIZABETH CUBBAGE AND JANELL MCNEILL, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted May 11, 1994—Decided July 14, 1994.

Before Judges KING, HAVEY and A.A. RODRÍGUEZ.

*Arlene Gilbert Groch,* attorney for appellant (*Ms. Groch* and *Cynthia Brassington,* on the brief).

*Stark & Stark,* attorneys for respondent Favorite Nurses (*Thomas B. Lewis,* of counsel; *Jonathan D. Zimet,* on the brief).

*Genova, Burns, Trimboli & Vernoia,* attorneys for respondent Newcomb Medical Center (*John C. Petrella,* of counsel and on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

I

Doctor Elmer Mattioli (Mattioli) committed acts of sexual abuse and harassment against Meryl Szczepanski (plaintiff), a nurse working at Newcomb Hospital in Vineland, Cumberland County (Newcomb). She reported the incident to Newcomb and to Favorite Nurses (Favorite), her employment agency. Instead of disciplining or sanctioning Mattioli, Newcomb and Favorite allegedly interfered with her employment at Newcomb and elsewhere. Plaintiff sued Mattioli under the common law and Newcomb and Favorite under the Law Against Discrimination, *N.J.S.A.* 10:5-1 to 10:5-42. She won on all claims after a month-long jury trial. The trial judge awarded attorney fees against Newcomb and Favorite pursuant to the Law Against Discrimination. However, the judge limited the award to the percentage of the judgment that plaintiff's counsel could have claimed under the contingent fee agreement between plaintiff and her counsel.

Plaintiff appeals from the fee award, claiming that the trial judge erred by ruling, essentially as a matter of law, that the contingent fee agreement limited his discretion in determining a "reasonable" fee. Newcomb and Favorite argue that the judge chose to follow the contingent fee agreement as a matter of permissible discretion rather than as a matter of law. We conclude that the judge applied improper legal standards and reverse.

## II

This is the procedural context. On August 23, 1988, plaintiff filed her common-law complaint against Dr. Mattioli for sexual assault, battery, and emotional distress. On February 14, 1989, she filed an amended complaint which added Newcomb and Favorite as defendants and charged them with retaliatory discharge and interference with her right to employment. She sought compensatory and punitive damages and counsel fees from each defendant.

On August 3, 1992, the judge granted Favorite's motion for dismissal of plaintiff's claim against it for punitive damages. The jury then returned these verdicts:

1. $30,000 against Dr. Mattioli for compensatory damages.
2. $10,000 against Dr. Mattioli for punitive damages.
3. $10,000 against Newcomb for compensatory damages.
4. $10,000 against Favorite for compensatory damages.
5. $50,000 against Newcomb for punitive damages.

On November 30, 1992, the judge entered a judgment of $40,373 plus $10,000 in punitive damages against Mattioli; $12,534 plus $50,000 in punitive damages against Newcomb, and $12,534 against Favorite. The final judgments for compensatory damages included prejudgment interest.

In her certification of February 12, 1993, plaintiff's counsel claimed that she spent "in excess of 676.8 hours" on the case and incurred costs of $3,906. Per her usual hourly rate of $200 and a multiplier of two, she calculated the fee at $270,720 (at $400 per hour), for a total, fees and costs, of $274,626. Favorite opposed the fee as unreasonable and claimed that it should not be liable for any fees. Newcomb also opposed the hourly rate, the multiplier, and the number of hours claimed as excessive. Plaintiff's counsel submitted a supplemental certification on June 7, 1993, reflecting additional work since the first certification which raised the total for fees and costs to $278,740.

The judge found that the contingent fee arrangement between plaintiff and her counsel served as an upper limit on the fee he

could award. He then subtracted the portion that reflected plaintiff's recovery against Mattioli, as well as those costs not subject to fee-shifting, from the total judgment, and he awarded a fee of one-third of that residual amount. One-third was the percentage contained in the contingent fee agreement. The agreement is not before us in this record.

On June 21, 1993, the judge entered a written order requiring Newcomb and Favorite to pay plaintiff "a reasonable counsel fee equal to the contingency fee earned by Plaintiff's counsel on the respective claims against them." The stated sums were $20,000 payable by Newcomb (on the $60,000 total recovery) and $3,333 by Favorite (on the $10,000 total recovery), or one-third of the judgments against each of them, before prejudgment interest. Dr. Mattioli has paid the $40,000 total judgment against him and is not involved in this appeal. The fee dispute on appeal does not relate to his common-law claim.

### III

Plaintiff claims that the judge erred by failing to follow case law holding that contingent fee agreements do not limit the fee which a judge can award under a fee-shifting statute. Newcomb and Favorite basically contend that the fee-shifting statute gives the judge considerable discretion, which he did not abuse by giving conclusive weight to the contingent fee agreement in this particular situation.

In order to award attorneys' fees under *R.* 4:42–9, there must be a specific source of authority, such as the statute involved in this case, *N.J.S.A.* 10:5–27.1.

In any action or proceeding brought under this act, the prevailing party may be awarded a reasonable attorney's fee as part of the cost, provided however, that no attorney's fee shall be awarded to the respondent unless there is a determination that the charge was brought in bad faith.

To determine an appropriate amount to award, a court must consider counsel's "affidavit of services addressing the factors enumerated by RPC 1.5(a)," including "a recitation of other fac-

tors pertinent in the evaluation of the services rendered." *R.* 4:42–9(b). The RPC provides that:

(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[*RPC* 1.5.]

The Law Against Discrimination's provision for attorney fees provides virtually no direction to the courts, saying only that, "[i]n any action or proceeding brought under this act, the prevailing party may be awarded a reasonable attorney's fee as part of the cost. . . ." *N.J.S.A.* 10:5–27.1. *Specialized Medical Systems v. Lemmerling,* 252 *N.J.Super.* 180, 599 *A.*2d 578 (1991), *certif. denied,* 127 *N.J.* 565, 606 *A.*2d 375 (1992), is the only extant New Jersey authority considering the limits that a contingent fee arrangement places on the fee which a court may award as "reasonable." That case involved a contractual fee-shifting provision for payment to the prevailing party in any dispute over the contract of "all costs and expenses of such litigation or proceedings including attorney's fees." *Id.,* 252 *N.J.Super.* at 181–82, 599 *A.*2d 578.

In *Specialized Medical Systems* we declared that contingent fee agreements did not prevent the prevailing party's counsel from seeking a greater fee award calculated on an otherwise permissible basis:

We hold that where the retainer agreement contemplates the possibility of recovery of counsel fees in lieu of payment from the client, counsel may endeavor

to collect them even though the client may not be obligated for the entire amount. Our judicial policy has always been to promote representation by not discouraging individuals from "bringing meritorious causes of action," S. Pressler, *Current N.J. Court Rules, R.* 4:42–9 Comment (1991), and we believe that our holding supports that policy.

[*Id.* at 186–87, 599 *A.*2d 578.]

*Specialized Medical Systems* embellished that pronouncement with a footnote which perhaps seemed to distinguish contractual fee-shifting provisions from statutory fee-shifting provisions:

We recognize that the issue in this case is different than where counsel fees are awarded under a statute which promotes law suits to vindicate public policy. *See, e.g., Torres v. Attorney General,* 391 *Mass.* 1, 460 *N.E.*2d 1032, 1039–40 (1984). Here no statutory authorization for the award of counsel fees was involved.

[*Specialized Medical Systems, supra,* 252 *N.J.Super.* at 187 n. 7, 599 *A.*2d 578.]

*Torres* involved the Massachusetts state government's disclosure of "personal data" in violation of Massachusetts statutes. Those statutes allowed courts to award prevailing claimants the costs which they "incurred," including counsel fees. The legal services agency that represented the prevailing party in *Torres* sought to recover fees. The issue was whether its client, who was not bound to pay for representation, had "incurred" those fees for purposes of the statute. The *Torres* court awarded fees to the legal services agency on the ground that the purpose of the fee-shifting statute was to encourage enforcement suits at the wrongdoer's expense, regardless of the arrangement between the prevailing party and that party's counsel. *Torres, supra,* 460 *N.E.*2d at 1039–40.

We do not perceive that the public policy discussed in *Torres* truly differs from the public policy that the *Specialized Medical Systems* decision desired to vindicate: awarding fees which attorneys in private practice would consider a sufficient inducement to represent a client with a "meritorious cause of action." As long as the claim has merit, we do not think it matters whether the claim is grounded in an anti-discrimination statute, or in a private contract. Limiting the awardable fee in all cases to the amount of a contingent fee arrangement ultimately could dampen counsel's

enthusiasm, independent of the nature or merits of the cause of action.

Federal case law on fee-shifting instructs us that the existence of a contingent fee agreement does not control the fee-award outcome. The statement in *Johnson v. Georgia Highway Express, Inc.,* 488 *F.*2d 714, 718 (5th Cir.1974), that "[i]n no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay," was specifically discredited by the United States Supreme Court. The federal Supreme Court observed that both the Congress and other federal courts considered the *Johnson* statement inaccurate, and agreed with Congress and those courts that the "contingency-fee factor is simply that, a factor." *Blanchard v. Bergeron,* 489 *U.S.* 87, 92–94, 109 *S.Ct.* 939, 943–45, 103 *L.Ed.*2d 67, 74–76 (1989). We observe that the language in the fee-shifting statute before the *Blanchard* Court, 42 *U.S.C.A.* § 1988, was identical to the operative language of *N.J.S.A.* 10:5–27.1 in this case: "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 *U.S.C.A.* § 1988; *see Blanchard, supra,* 489 *U.S.* at 91, 109 *S.Ct.* at 943, 103 *L.Ed.*2d at 73.

There is no mistaking the *Blanchard* Court's position:

But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees and to hold otherwise would be inconsistent with the [civil rights] statute and its policy and purpose.

[*Blanchard, supra,* 489 *U.S.* at 93, 109 *S.Ct.* at 944, 103 *L.Ed.*2d at 75.]

*See also* 2 Schwartz & Kirklin, *Section 1983 Litigation* § 24.3 at 354 (2d ed. 1991).

Apart from the erroneous statement about the effect of a contingent fee agreement, the Fifth Circuit's *Johnson* rationale for the federal fee-shifting statute otherwise comported with the *Blanchard* Court's understanding of the policy:

The statute was not passed for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of Title VII litigation. Adequate compensation is necessary, however, to enable an attorney to serve his

client effectively and to preserve the integrity and independence of the profession. The guidelines contained herein are merely an attempt to assist in this balancing process.

[*Johnson, supra,* 488 *F.*2d at 719–20.]

*See Blanchard v. Bergeron, supra,* 489 *U.S.* at 93, 109 *S.Ct.* at 944, 103 *L.Ed.*2d at 75, stating that "*Johnson's* 'list of 12' thus provides a useful catalog of the many factors to be considered in assessing the reasonableness of an award of attorney's fees; but the one factor at issue here, the attorney's private fee arrangement, standing alone is not dispositive." We will not distinguish the rationale for fee-shifting policy in the federal fee-shifting statute cases or our State's LAD cases from our *Specialized Medical Systems* premise of promoting representation " 'by not discouraging individuals from bringing meritorious causes of action.' " *Specialized Medical Systems, supra,* 252 *N.J.Super.* at 186–87, 599 *A.*2d 578.

Favorite's reliance on *Venegas v. Mitchell,* 495 *U.S.* 82, 110 *S.Ct.* 1679, 109 *L.Ed.*2d 74 (1990), is misplaced. The issue in *Venegas* was whether the prevailing party had to pay his attorney the difference between the fee which the judge decided was "reasonable" and the amount calculated under the contingent fee agreement between the prevailing party and his attorney, a fee higher than the judge's award. Venegas requested what amounted to a partial invalidation of or discount on the contingent-fee arrangement with his counsel, a private arrangement not involving the non-prevailing defendant. The Supreme Court saw this as an entirely different matter from the question in *Blanchard* of whether the contingent fee arrangement necessarily limits the amount that the court could award as a fee to the prevailing party. The Court refused to countenance Venegas's plea for a discount on his bargained-for fee. *Venegas, supra,* 495 *U.S.* at 86–90, 110 *S.Ct.* at 1682–84, 109 *L.Ed.*2d at 81–84.

In the case before us, the trial judge did not consider and articulate the relative merits of an hours-and-rate fee compared to a contingent fee and then choose the contingent fee as a more justified course. Instead, the judge assumed that any alternatives

to the contractual contingent fee were foreclosed as a matter of law. The judge here declared that plaintiff and her counsel had arrogated or appropriated the flexibility he might have enjoyed otherwise under the statute to award a "reasonable" amount. As the judge put it:

> In this matter the fee of reasonableness is set by contingency. That's the key point. Built into contingency fees are the awards which flow from contingency. That is, the high award for perhaps a small amount of services and the reverse of that is true in every contingency case in which the acceptance of a tough case requiring long and tedious hours in court with a modest award from the jury when translated into dollars comes down to, in this instance, $50 an hour.

The judge also faulted plaintiff and her counsel for not having avoided the problem that a contingent fee agreement posed by drafting an agreement which gave counsel an hourly fee upon victory but nothing upon defeat. We have specifically criticized such agreements: "Nor should we promote sham retainer agreements under which the attorney charges an hourly rate or other fee which his client understands he will not be obligated to pay." *Specialized Medical Systems, supra,* 252 *N.J.Super.* at 187, 599 *A.*2d 578.

On remand we also invite consideration of our recent opinions on this subject in *Silva v. Autos of Amboy, Inc.,* 267 *N.J.Super.* 546, 632 *A.*2d 291 (1993), and *Rendine v. Pantzer,* 276 *N.J.Super.* 398, 648 *A.*2d 223 (1994); *see also Chattin v. Cape May Greene, Inc.,* 243 *N.J.Super.* 590, 581 *A.*2d 91 (1990) (Judge Brody dissenting in part), *aff'd o.b.,* 124 *N.J.* 520, 591 *A.*2d 943 (1991).

Reversed and remanded for a full and fresh reconsideration of plaintiff's application fees.