661 A.2d 1232

MERYL SZCZEPANSKI, PLAINTIFF–RESPONDENT, v. NEWCOMB MEDICAL CENTER, INC., A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, FAVORITE NURSES, INC., A NEW JERSEY CORPORATION, DEFENDANTS–APPELLANTS, AND ELMER MATTIOLI, M.D., THOMAS RAYNOR, ELIZA-BETH CUBBAGE AND JANELL MCNEILL, DEFENDANTS.

Argued March 13, 1995—Decided July 24, 1995.

348

*John C. Petrella* argued the cause for appellants Newcomb Medical Center, Inc. (*Genova, Burns, Trimboli & Vernoia*, attorneys).

*Thomas B. Lewis* argued the cause for appellant Favorite Nurses, Inc. (*Stark & Stark*, attorneys).

*Arlene Gilbert Groch* argued the cause for respondent.

The opinion of the Court was delivered by

STEIN, J.

As in *Rendine v. Pantzer*, 141 *N.J.* 292, 661 *A.*2d 1202 (1995), also decided today, this appeal concerns the standards to be applied by trial courts in awarding a reasonable counsel fee under state fee-shifting statutes. Specifically, we consider the extent to which a plaintiff's contingent fee agreement with her attorney limits or affects the award of a reasonable attorney's fee. Collaterally, we address whether a reasonable attorney's fee awarded under a state fee-shifting statute must necessarily be proportion-

ate to the damages recovered in the litigation. Finally, we consider whether the submission of contemporaneous time records is a prerequisite to the award of fees under state fee-shifting statutes.

I

Because plaintiff's factual presentation is uncontested, we rely on the facts set forth in plaintiff's appellate brief. Plaintiff, Meryl Szczepanski, was a registered nurse employed by Favorite Nurses, Inc. (Favorite), which assigned her to work at the intensive-care unit of Newcomb Hospital, Inc. (Newcomb). In August 1987, defendant Dr. Elmer Mattioli approached plaintiff from behind, reached between her legs, and grabbed her anal-genital area. After plaintiff displayed outrage, Mattioli then bent over, pulled up his jacket, shook his buttocks at her, and stated, "Come on baby, do it."

Plaintiff immediately reported the incident to Newcomb. Newcomb told plaintiff that it no longer needed her nursing services and told Favorite not to send her to Newcomb because she had filed a complaint against Mattioli, a doctor of long standing at Newcomb. Initially, Favorite refused to reassign her to Newcomb or to any other hospital until she had decided "what she was going to do about her complaint against [Mattioli]." Thereafter, Favorite did not reassign plaintiff to any other hospital, falsely telling her that no work was available. Moreover, in an attempt to substantiate that plaintiff had been dismissed because of substandard performance, Newcomb falsified patient records, accused her of incompetence, and claimed that it had fired her moments before she had reported the sexual-misconduct incident. Notably, Newcomb neither investigated the incident nor disciplined Mattioli.

In August 1988, plaintiff filed suit against Mattioli for sexual assault and battery and intentional infliction of emotional distress, seeking compensatory and punitive damages and counsel fees. In February 1989, she filed an amended complaint, adding as defendants Favorite, Newcomb, Newcomb's Chief Executive Officer,

Thomas Raynor, and two Newcomb supervisors, Elizabeth Cubbage and Janell McNeill. Plaintiff charged Newcomb, Favorite, Cubbage, and McNeil with retaliatory discharge, contrary to the Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 to –42, specifically *N.J.S.A.* 10:5–12d. She further charged Newcomb, Raynor, Cubbage, and McNeil with defamation and tortious interference with her employment rights. Plaintiff sought compensatory and punitive damages and counsel fees from each defendant.

In March 1989, the trial court dismissed plaintiff's defamation claim against Newcomb and Raynor, and plaintiff's claim for tortious interference with her employment rights against Raynor, which removed Raynor from the case. In August 1992, the trial court also dismissed plaintiff's claims against Favorite for punitive damages.

After a month-long jury trial, the jury returned verdicts against (1) Mattioli for assault and battery and intentional infliction of emotional distress, (2) Newcomb for tortious interference with plaintiff's employment rights, and (3) Newcomb and Favorite for retaliatory discharge, pursuant to *N.J.S.A.* 10:5–12d. The jury awarded plaintiff $30,000 for compensatory damages and $10,000 for punitive damages against Mattioli, $10,000 for compensatory damages and $50,000 for punitive damages against Newcomb, and $10,000 for compensatory damages against Favorite. The trial court's final judgment reflected a total recovery of $115,441, including prejudgment interest.

Following trial, plaintiff's counsel made an application against Newcomb and Favorite for counsel fees pursuant to *N.J.S.A.* 10:5–27.1. In her certification, plaintiff's counsel asserted that she had spent 676.8 hours on the litigation and had incurred costs of $3,906.02. Counsel's certification concerning hours expended noted that most of her recorded time sheets were no longer available "[a]s a result of a personnel problem," and stated that the time spent during the period for which time sheets were missing was conservatively "reconstructed" by a review of her files, a process

that in her view benefitted defendants because the file did not reflect all of the services rendered.

Pursuant to her regular hourly rate of $200, she calculated her lodestar fee amount (the product of the number of hours reasonably expended and counsel's reasonable hourly rate, *see Rendine, supra*, 141 *N.J.* at 335, 661 *A.*2d at 1226) to be $135,360. Counsel then requested a one-hundred-percent enhancement of that amount to reflect the contingent nature of her compensation agreement, or a total counsel-fee award of $270,720 in addition to costs. In June 1993, plaintiff's counsel submitted a supplemental certification reflecting work expended since the first certification, which increased the total for fees and costs to $278,740.

The trial court found that the contingent-fee agreement between plaintiff and her counsel, pursuant to which counsel was to receive one-third of any recovery up to $250,000, served as an upper limit on the fee that the court could award:

In this matter the fee of reasonableness is set by contingency. That's the key point. Built into contingency fees are the awards [that] flow from contingency. That is, the high award for perhaps a small amount of services and the reverse of that is true in every contingency case in which the acceptance of a tough case requiring long and tedious hours in court with a modest award from the jury when translated into dollars come[s] down to, in this instance, $50 an hour.

As a result, the court entered an order requiring Newcomb and Favorite to pay plaintiff "a reasonable counsel fee equal to the contingency fee earned by [p]laintiff's counsel on the respective claims against [them]," and apportioning "[e]xpenses in the amount of $3,906.02 * * * among [d]efendants on a *pro rata* basis in relation to their share of the overall verdict." The court subtracted from the judgment the portion reflecting plaintiff's recovery against Mattioli, $40,000, and required Newcomb to pay one-third of the $60,000 award against it, $20,000, and Favorite to pay one-third of the $10,000 award against it, $3,333. In addition, the court required Newcomb to pay expenses in the amount of $2,128.78, and Favorite to pay expenses in the amount of $351.54.

The Appellate Division, however, reversed and "remanded for a full and fresh reconsideration of plaintiff's application fees." 276 *N.J.Super.* 11, 19, 647 *A.*2d 162 (1994). That court determined that "the existence of a contingent fee agreement does not control the fee-award outcome," *id.* at 17, 647 *A.*2d 162, reasoning that "[l]imiting the awardable fee in all cases to the amount of a contingent fee arrangement ultimately could dampen counsel's enthusiasm, independent of the nature or merits of the cause of action." *Id.* at 16–17, 647 *A.*2d 162. Relying on the Supreme Court's decision in *Blanchard v. Bergeron,* 489 *U.S.* 87, 92–94, 109 *S.Ct.* 939, 943–45, 103 *L.Ed.*2d 67, 74–76 (1989), the Appellate Division observed that " 'the contingency-fee factor is simply that, a factor' " to be considered in determining a reasonable fee award. 276 *N.J.Super.* at 17, 649 *A.*2d 164 (quoting *Blanchard, supra,* 489 *U.S.* at 93, 109 *S.Ct.* at 944, 103 *L.Ed.*2d at 75). On remand it "also invite[d] consideration of [its] recent opinions on this subject" in *Rendine v. Pantzer,* 276 *N.J.Super.* 398, 648 *A.*2d 223 (1994), *Silva v. Autos of Amboy, Inc.,* 267 *N.J.Super.* 546, 632 *A.*2d 291 (1993), and *Chattin v. Cape May Greene, Inc.,* 243 *N.J.Super.* 590, 581 *A.*2d 91 (1990) (Brody, J., dissenting), *aff'd o.b.,* 124 *N.J.* 520, 591 *A.*2d 943 (1991). 276 *N.J.Super.* at 19, 647 *A.*2d 162.

We granted Newcomb's and Favorite's petition for certification. 139 *N.J.* 185, 652 *A.*2d 173 (1994).

II

In *Rendine, supra,* we set forth the procedure to be followed by trial courts in determining a reasonable counsel fee under state fee-shifting statutes, explaining that the first and most important step in the process is the determination of the "lodestar": "the number of hours reasonably expended multiplied by a reasonable hourly rate." 141 *N.J.* at 335, 661 *A.*2d at 1226. We noted a trial court's obligation to exclude from the lodestar calculation hours not reasonably expended. In that respect, we referred to the United States Supreme Court's decision in *City of Riverside v. Rivera,* 477 *U.S.* 561, 106 *S.Ct.* 2686, 91 *L.Ed.*2d 466 (1986), in

which the Court's plurality opinion upheld, in a suit alleging civil-rights violations, a counsel-fee award of approximately $245,000 after a trial resulting in an award of compensatory and punitive damages of $33,350. The Court concluded in *Rivera* that federal fee-shifting statutes do not require proportionality between counsel fee-awards and damage recoveries, although the amount of damages awarded is a material factor in setting a reasonable counsel fee. Nevertheless, we observed that in specific cases a trial court may exclude hours from the lodestar calculation if in its view the hours expended exceed "those that competent counsel reasonably would have expended to achieve a comparable result," in the context of "the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives." *Rendine, supra,* 141 *N.J.* at 336, 661 *A.*2d at 1227.

We also noted in *Rendine* that " '[i]f .... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.' " *Id.* at 336, 661 *A.*2d at 1227 (quoting *Hensley v. Eckerhart,* 461 *U.S.* 424, 436, 103 *S.Ct.* 1933, 1941, 76 *L.Ed.*2d 40, 52 (1983)). The rationale underlying that aspect of *Hensley* can be traced to the congressional determination to limit counsel-fee awards under federal fee-shifting statutes to "prevailing parties," a term generously defined as parties that " 'succeed on any significant issue in litigation [that] achieves some of the benefit the parties sought in bringing suit.' " *Hensley, supra,* 461 *U.S.* at 433, 103 *S.Ct.* at 1938, 76 *L.Ed.*2d at 50 (quoting *Nadeau v. Helgemoe,* 581 *F.*2d 275, 278–79 (1st Cir.1978)). A more recent formulation is that "to be considered a prevailing party ... the plaintiff must be able to point to a resolution of the dispute [that] changes the legal relationship between itself and defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 *U.S.* 782, 792, 109 *S.Ct.* 1486, 1493, 103 *L.Ed.*2d 866, 877 (1989). Because a plaintiff's status as a prevailing party might "say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved," *Hensley, supra,*

461 *U.S.* at 436, 103 *S.Ct.* at 1941, 76 *L.Ed.*2d at 52, the Court in *Hensley* authorized trial courts either to "attempt to identify specific hours [in the lodestar calculation] that should be eliminated ... [or] simply reduce the award to account for the limited success." *Id.* at 436–37, 103 *S.Ct.* at 1941, 76 *L.Ed.*2d at 52.

We understand Newcomb's and Favorite's contention that a reasonable counsel fee under the LAD should not exceed the fee payable pursuant to the plaintiff's contingent-fee agreement to be roughly analogous to the principle that a reasonable fee should reflect the extent of a plaintiff's success in the litigation. Simply stated, defendants argue that because plaintiff's counsel agreed to conduct the litigation and be compensated by plaintiff on the basis of a contingent-fee agreement, the fee payable under that agreement bears sufficient relationship to a "reasonable" fee so that the trial court did not abuse its discretion in limiting the fee payable under the LAD to the agreed upon contingent fee. That viewpoint is supported to some extent by the Seventh Circuit's opinion in *Lenard v. Argento*, 808 *F.*2d 1242 (1987), in which the court observed:

> Although the Supreme Court has now made clear both that a contingent fee contract does not place a ceiling on the award of attorney's fees and that the award may exceed the judgment[,] ... the existence and terms of such a contract, and the relationship between the fees sought by counsel and the relief obtained, continue to be relevant to the district judge's decision on how large a fee to award. The statute allows only a reasonable fee. This means a fee large enough to induce competent counsel to handle the plaintiff's case, but no larger. The existence of a contingent fee contract cannot be conclusive evidence of what a reasonable fee is, because the plaintiff's lawyer might not have been willing to take the case on the terms set forth in the contract except for the hope of some additional award under section 1988....
>
> ....
>
> ... Civil rights tort suits are not identical to conventional personal injury suits; but where the civil rights suit involves substantial stakes, settled precedent, and no defense of immunity, the resemblance may be close enough to give the terms of the contingent fee arrangement considerable evidentiary significance—a proposition that we do not interpret *Rivera* to have rejected.

[*Id.* at 1247–48 (citations omitted).]

Although the terms of a contingent-fee agreement is a factor in determining a reasonable fee under federal and state fee-shifting statutes, the United States Supreme Court has rejected the contention that the statutory fee may not exceed the amount payable pursuant to a contingent-fee agreement. In *Blanchard, supra,* 489 *U.S.* 87, 109 *S.Ct.* 939, 103 *L.Ed.*2d 67, the plaintiff sought damages under 42 *U.S.C.A.* § 1983 from the St. Martin Parish Sheriff's Department and two of its officers for injuries sustained from a beating inflicted by Sheriff's Deputy Bergeron. After a jury had awarded Blanchard $5,000 in compensatory damages and $5,000 in punitive damages, he sought counsel fees and costs as the prevailing party that amounted to approximately $40,000. The district court awarded a fee of $7,500. Blanchard appealed, seeking a higher fee, but the Court of Appeals for the Fifth Circuit reduced the fee to $4,000, citing Blanchard's forty-percent contingent-fee agreement with his counsel and concluding that that agreement "serves as a cap on the amount of attorney's fee[s] to be awarded." 831 *F.*2d 563, 564 (1987). Reversing, the Supreme Court held unanimously that the legal fee provided for in a contingent-fee agreement does not limit the statutory-fee award under § 1988:

> If a contingent-fee agreement were to govern as a strict limitation on the award of attorney's fees, an undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation. The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and short-change efforts to seek effective injunctive or declaratory relief. Affirming the decision below would create an artificial disincentive for an attorney who enters into a contingent-fee agreement, unsure of whether his client's claim sounded in state tort law or in federal civil rights, from fully exploring all possible avenues of relief. Section 1988 makes no distinction between actions for damages and suits for equitable relief....
>
> It should also be noted that we have not accepted the contention that fee awards in § 1983 damages cases should be modeled upon the contingent-fee arrangements used in personal injury litigation. "[W]e reject the notion that a civil rights action for damages constitutes nothing more than a private tort suit benefiting only the individual plaintiffs whose rights were violated. Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *Riverside v. Rivera,* 477 *U.S.* 561, 574, 106 *S.Ct.* 2686, 2694, 91 *L.Ed.*2d 466 (1986).

Respondent cautions us that refusing to limit recovery to the amount of the contingency agreement will result in a "windfall" to attorneys who accept § 1983 actions. Yet the very nature of the recovery under §, 1988 is designed to prevent any such "windfall." Fee awards are to be reasonable, reasonable as to billing rates and reasonable as to the number of hours spent in advancing the successful claims. Accordingly, fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of a plaintiff's civil rights claim. It is central to the awarding of attorney's fees under § 1988 that the district court judge, in his or her good judgment, make the assessment of what is a reasonable fee under the circumstances of the case. The trial judge should not. be limited by the contractual fee agreement between plaintiff and counsel.
 [489 *U.S.* at 95–96, 109 *S.Ct.* at 945–46, 103 *L.Ed.*2d at 76–77.]

As the Appellate Division noted, the only reported New Jersey decision addressing the issue is *Specialized Medical Systems, Inc. v. Lemmerling,* 252 *N.J.Super.* 180, 599 *A.*2d 578 (App.Div.1991), *certif. granted,* 127 *N.J.* 565, 606 *A.*2d 375 (1992) (appeal dismissed pursuant to consent order for settlement), in which case the authorization for a counsel-fee award had been contractual rather than statutory. 276 *N.J.Super.* at 15, 647 *A.*2d 162. Nevertheless, the Appellate Division in *Lemmerling* held that "a prevailing party can collect reasonable counsel fees even though he is not otherwise obligated to pay them to his counsel, at least if the attorney and client understand their retainer agreement to so permit." 252 *N.J.Super.* at 187, 599 *A.*2d 578.

We are fully in accord with the Supreme Court's holding in *Blanchard* that the reasonable counsel fee payable to the prevailing party under fee-shifting statutes is determined; independently of the provisions of the fee agreement between that party and his or her counsel. The statutory-fee award may be comparable to or substantially different from the amount payable under a negotiated fee agreement. The agreement determines the fee payable by the prevailing party to counsel, and might reflect the risks inherent in the litigation, the plaintiff's financial resources, and the prospect that counsel will receive a significant fee in the event of a large verdict but no fee at all if the suit is unsuccessful. The statutory-fee award determines the fee payable by the unsuccessful party to the prevailing party. As our opinion in *Rendine* emphasizes, the focus of that determination is to ascertain what

fee is reasonable, taking into account the hours expended, the lawyer's customary hourly rate, the success achieved, the risk of nonpayment, and other material factors. 141 *N.J.* at 334–345, 661 *A.*2d at 1226–1231. Although relevant, the fee payable under a contingent-fee agreement may bear little relation to the reasonable fee award authorized by statute, and in no event should the amount payable under the contingent-fee agreement serve as a ceiling on the amount payable by statute.

We also note that in *Venegas v. Mitchell,* 495 *U.S.* 82, 110 *S.Ct.* 1679, 109 *L.Ed.*2d 74 (1990), the Supreme Court underscored that statutory-fee awards and fees payable under contingent-fee agreements are distinct and independent concepts. The Court rejected Venegas's contention that the statutory counsel-fee award under 42 *U.S.C.A.* § 1988 in the amount of $75,000 relieved him of the obligation to pay his counsel the sum of $406,000 due under his contingent-fee agreement. The court observed:

> But it is a mighty leap from these propositions to the conclusion that § 1988 also requires the District Court to invalidate a contingent-fee agreement arrived at privately between attorney and client. We have never held that § 1988 constrains the freedom of the civil rights plaintiff to become contractually and personally bound to pay an attorney a percentage of the recovery, if any, even though such a fee is larger than the statutory fee that the defendant must pay to the plaintiff.
>
> [495 *U.S.* at 87, 110 *S.Ct.* at 1682–83, 109 *L.Ed.*2d at 82.]

The Court concluded that Venegas was obligated to honor the contingent-fee agreement:

> [T]here is nothing in the section to regulate what plaintiffs may or may not promise to pay their attorneys if they lose or if they win. Certainly § 1988 does not on its face prevent the plaintiff from promising an attorney a percentage of any money judgment that may be recovered. Nor has Venegas pointed to anything in the legislative history that persuades us that Congress intended § 1988 to limit civil rights plaintiffs' freedom to contract with their attorneys.
>
> [*Id.* at 86–87, 110 *S.Ct.* at 1682, 109 *L.Ed.*2d at 82.]

### III

We are in accord with the Appellate Division's determination that the matter should be remanded to the Law Division for reconsideration of the counsel-fee award, 276 *N.J.Super.* at 19, 647 *A.*2d 162, not only because the trial court improperly viewed the

contingent-fee agreement as determinative of the statutory fee, but also because the disparity between the amount of the judgment and the lodestar-fee request compels the exercise of informed discretion by the trial court in determining a reasonable statutory fee. Although the question of proportionality between the judgment and the statutory counsel fee has not been raised, we address it to provide guidance to the trial court in resolving the counsel-fee issue. As we noted in *Rendine, supra*, 141 *N.J.* at 336, 661 *A.*2d at 1226, the United States Supreme Court had rejected "the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers." *Rivera, supra*, 477 *U.S.* at 574, 106 *S.Ct.* at 2694, 91 *L.Ed.*2d at 479. In *Rivera*, police officers of the City of Riverside, acting without a warrant, disrupted a party at a private residence using tear gas and unnecessary physical force. Eight persons who had attended the party, four of whom had been arrested, sued the City, the police chief, and thirty police officers under federal civil-rights statutes seeking damages and declaratory and injunctive relief. After the trial court had granted summary judgment in favor of a number of the officers, the case proceeded to trial. The jury returned thirty-seven verdicts against the city and five of the officers, awarding the plaintiffs $33,350 in compensatory and punitive damages. The plaintiffs also were awarded counsel fees of $245,456.25, the district court finding reasonable both the hours expended by counsel and the hourly rates on which the lodestar fee was based. *Id.* at 565–66, 106 *S.Ct.* at 2689–90, 91 *L.Ed.*2d at 474. The Ninth Circuit affirmed the counsel-fee award, 679 *F.*2d 795 (1982), but the Supreme Court remanded the matter for reconsideration in light of *Hensley. City of Riverside v. Rivera*, 461 *U.S.* 952, 103 *S.Ct.* 2421, 77 *L.Ed.*2d 1310 (1983). On remand the district court made the same counsel-fee award, and the court of appeals again affirmed. 763 *F.*2d 1580, 1582 (9th Cir.1985). Justice Brennan, writing for a plurality of the Court, upheld the counsel-fee award, noting that damages recovered were material to the reasonableness of counsel-fee awards but that federal fee-shifting statutes

did not mandate proportionality between fee awards and damages recovered. The Court observed:

This case illustrates why the enforcement of civil rights laws cannot be entrusted to private-sector fee arrangements. The District Court observed that "[g]iven the nature of this lawsuit and the type of defense presented, many attorneys in the community would have been reluctant to institute and to continue to prosecute this action." The court concluded, moreover, that "[c]ounsel for plaintiffs achieved excellent results for their clients, and their accomplishment in this case was outstanding. The amount of time expended by counsel in conducting this litigation was reasonable and reflected sound legal judgment under the circumstances." Nevertheless, petitioners suggest that respondents' counsel should be compensated for only a small fraction of the actual time spent litigating the case. In light of the difficult nature of the issues presented by this lawsuit and the low pecuniary value of many of the rights respondents sought to vindicate, it is highly unlikely that the prospect of a fee equal to a fraction of the damages respondents might recover would have been sufficient to attract competent counsel. Moreover, since counsel might not have found it economically feasible to expend the amount of time respondents' counsel found necessary to litigate the case properly, it is even less likely that counsel would have achieved the excellent results that respondents' counsel obtained here. Thus, had respondents had to rely on private-sector fee arrangements, they might well have been unable to obtain redress for their grievances. It is precisely for this reason that Congress enacted § 1988.

[477 *U.S.* 579–80, 106 *S.Ct.* at 2696–97, 91 *L.Ed.*2d at 482–83 (citations & footnote omitted).]

Dissenting, then Justice Rehnquist acknowledged that if litigation under federal fee-shifting statutes is "unnecessarily prolonged by the bad-faith conduct of defendants, or if the litigation produces significant, identifiable benefits for persons other than the plaintiffs, then ... § 1988 should allow a larger award of attorney's fees than would be 'reasonable' where the only relief is the recovery of monetary damages by individual plaintiffs." *Id.* at 594, 106 *S.Ct.* at 2704, 91 *L.Ed.*2d at 492. Concluding that that instant litigation possessed none of the characteristics warranting a fee award disproportionate to the damages recovered, Justice Rehnquist expressed the view that reasonable fees ordinarily must reflect the result achieved in the litigation:

The analysis of whether the extraordinary number of hours put in by respondents' attorneys in this case was "reasonable" must be made in light of both the traditional billing practices in the profession, and the fundamental principle that the award of a "reasonable" attorney's fee under § 1988 means a fee that would have been deemed reasonable if billed to affluent plaintiffs by their own attorneys. . . .

. . .

... If A has a claim for contract damages in the amount of $10,000 against B, and retains an attorney to prosecute the claim, it would be both extraordinary and unjustifiable, in the absence of any special arrangement, for the attorney to put in 200 hours on the case and send the client a bill for $25,000. Such a bill would be "unreasonable," regardless of whether A obtained a judgment against B for $10,000 or obtained a take-nothing judgment. And in such a case, where the prospective recovery is limited, it is exactly this "billing judgment" [that] enables the parties to achieve a settlement; any competent attorney, whether prosecuting or defending a contract action for $10,000, would realize that the case simply cannot justify a fee in excess of the potential recovery on the part of either the plaintiff's or the defendant's attorney. All of these examples illuminate the point made in Hensley that "the important factor" in determining a "reasonable" fee is the "results obtained." The very "reasonableness" of the hours expended on a case by a plaintiff's attorney necessarily will depend, to a large extent, on the amount that may reasonably be expected to be recovered if the plaintiff prevails.

[*Id.* at 591–93, 106 *S.Ct.* at 2703–04, 91 *L.Ed.*2d at 490–92 (citation omitted).]

Concurring in the judgment, Justice Powell agreed with the view of the plurality that neither the Court's decisions nor the legislative history of § 1988 supported a "rule of proportionality" governing the award of attorney's fees in civil-rights cases. Justice Powell also noted:

Where recovery of private damages is the purpose of a civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought. In some civil rights cases, however, the court may consider the vindication of constitutional rights in addition to the amount of damages recovered. In this case, for example, the District Court made an explicit finding that "public interest" had been served by the jury's verdict that the warrantless entry was lawless and unconstitutional. Although the finding of a Fourth Amendment violation hardly can be considered a new constitutional ruling, in the special circumstances of this case, the vindication of the asserted Fourth Amendment right may well have served a public interest, supporting the amount of the fees awarded.

[*Id.* at 585–86, 106 *S.Ct.* at 2700, 91 *L.Ed.*2d at 486–87.]

In a footnote, Justice Powell added: "It probably will be the rare case in which an award of *private damages* can be said to benefit the public interest to an extent that would justify the disproportionality between damages and fees reflected in this case." *Id.* at 586 n. 3, 106 *S.Ct.* at 2700 n. 3, 91 *L.Ed.*2d at 487 n. 3.

The Third Circuit has twice addressed the issue of disproportionately after the Supreme Court's *Rivera* decision. In *Cunningham v. City of McKeesport*, 807 *F.*2d 49 (1986) (*Cunningham* II),

*cert. denied,* 481 *U.S.* 1049, 107 *S.Ct.* 2179, 95 *L.Ed.*2d ·836 (1987), on remand to the Third Circuit for reconsideration in light of *Rivera,* see 478 *U.S.* 1015, 106 *S.Ct.* 3324, 92 *L.Ed.*2d 731 (1986), the court of appeals reinstated its previous order reversing the judgment of the district court on the ground that it improperly had reduced the lodestar-fee request of the plaintiff's counsel. The underlying suit arose after the plaintiff had purchased an unoccupied house 'and garage in the City of McKeesport for $2,700 and, after receiving a fifteen-year interest-free loan, contracted to have the property rehabilitated for $15,000. Before work could be commenced, the City demolished the house and garage without notice to Cunningham. A jury verdict determined that the City and its building inspector had deprived the plaintiff of her property without due process in violation of 42 *U.S.C.A.* § 1983, and determined that the plaintiff's damages amounted to $35,000. The district court granted the defendant's remittitur motion and entered judgment for $17,000. *Cunningham v. City of McKeesport,* 753 *F.*2d 262, 264–65 (3d Cir.1985) (*Cunningham* I).

The plaintiff requested a counsel fee of $35,887.50, based on the assertion that counsel had expended 358 hours on the litigation at hourly rates ranging from $100 to $125 an hour. The trial court disallowed all but 219 hours, valued the services at $50 per hour, and applied a 50% negative multiplier to the resulting lodestar on the ground that "because [the plaintiff] sought recovery for herself alone she was not ... vindicating interests of the public at large, and thus an award of fees is unnecessary to achieve the purpose of the Civil Rights Act." *Cunningham* I, *supra,* 753 *F.*2d at 268. Reversing, the court of appeals held that the trial court had had no basis for reducing the hourly rate or disallowing hours of which it had lacked personal knowledge. It also held that application of a negative multiplier to the lodestar was improper, noting that "a claim that property has been destroyed by the state without due process of law will always present a claim unique to the plaintiff. Such uniqueness does not, however, place it outside the ambit of the Civil Rights Act of 1871 or the Civil Rights Attorney's Fees Awards Act of 1976." *Id.* at 268–69.

On remand from the Supreme Court, the court of appeals acknowledged that the question of proportionality of the fee in relation to the damages recovered constituted the basis for the remand, *Cunningham* II, *supra*, 807 *F*.2d at 50–51, and focused on Justice Powell's *Rivera* concurrence to determine whether modification of its prior decision was appropriate:

> We recognize that Justice Powell's decision does suggest a difference between cases in which "recovery of private damages is the purpose", and other cases for which "the court may consider the vindication of constitutional rights in addition to the amount of damages recovered." In Justice Powell's view, this distinction is relevant for evaluating the extent to which a jury's verdict serves the "public interest." Combined with the statement in the footnote that only in the rare case might the public interest justify a substantial disproportionality between damages and fees, Justice Powell's opinion might be read to suggest that disproportionality justifies a negative multiplier.
>
> [*Id.* at 53 (citations omitted).]

Nevertheless, the court of appeals reinstated its prior ruling, noting Justice Powell's view that neither the Court's decisions nor the statute's legislative history justified a rule of proportionality. The Court added:

> The facts of *City of Riverside* seem similar to those of a number of § 1983 cases that we have seen. If the facts of *City of Riverside* justify a "disproportionate" fee award, the facts in many if not most § 1983 cases should do so as well....
>
> ... Defendants did claim that because Cunningham sought recovery for herself alone, she was not vindicating interests of the public at large and so should not recover *any* fee. However, by whatever standards we evaluate the public interest served by a suit for private damages, the mere fact that a constitutional right is singular in nature cannot be determinative.
>
> [*Id.* at 54.]

Similarly, in *Northeast Women's Center v. McMonagle*, 889 *F*.2d 466 (3d Cir.1989), *cert. denied*, 494 *U.S.* 1068, 110 *S.Ct.* 1788, 108 *L.Ed.*2d 790 (1990), the court of appeals declined to apply a rule of proportionality in affirming a district-court award of attorneys fees pursuant to the civil-RICO statute, 18 *U.S.C.A.* §§ 1961 to 1968. The plaintiff, a pregnancy-counseling center that provided abortions and other gynecological services, brought suit against forty-two persons who allegedly had harassed the center's employees and clients, alleging violations of federal antitrust and RICO statutes as well as common-law tort and trespass claims. After a

jury trial, twenty-four defendants were found liable for trespass and were assessed $42,087.95 in compensatory damages, and twenty-seven defendants were found liable under RICO and as-sessed $887 in damages, which the court trebled to $2,661 pursuant to 18 *U.S.C.A.* § 1964(c). The court also granted injunctive relief on the trespass claim. *Id.* at 468.

The center sought attorneys fees of $76,888.67 and costs of $11,808.79. The trial court deducted from the lodestar fee hours spent on the injunction proceedings that had been ancillary to the common-law trespass claim, and hours directly related to the trespass and antitrust claims, and awarded counsel fees and costs of $64,946.11 pursuant to 18 *U.S.C.A.* § 1964(c), the fee-shifting provision of the civil-RICO statute. *Id.* at 469–70.

Although the defendants had contended that the fee award was disproportionate to the RICO recovery, the Third Circuit reasserted its holding in *Cunningham* II, *supra*, 807 *F.*2d at 53–54, that federal fee-shifting statutes did not require proportionality between counsel-fee awards and damage recoveries, rejecting the defendants' assertion that the policies underlying the civil-RICO statute were significantly different than those underlying federal civil-rights legislation. *McMonagle, supra*, 889 *F.*2d at 473–74. The court noted that the fee-shifting provision of the RICO statute also "was designed to encourage private litigants to promote the policies underlying the substantive legislation." *Id.* at 474. The court stated: "As we recently observed, 'Congress provided fee shifting to enhance enforcement of important civil rights, consumer-protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.'" *Ibid.* (quoting *Student Pub. Interest Research Group v. AT & T Bell Lab.*, 842 *F.*2d 1436, 1449 (3d Cir.1988)).

We are substantially in accord with the conclusions reached by the Third Circuit in *Cunningham* II, *supra*, and *McMonagle, supra*, as well as with those expressed in Justice

Brennan's plurality opinion in *Rivera*. We decline to construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation, as in this case, vindicates no rights other than those of the plaintiff. To be sure, an overriding public interest is also served by plaintiff's successful prosecution of this suit for retaliatory discharge under the LAD. Plaintiff's recovery of damages fulfills and vindicates the legislative purpose of preventing employers from retaliating unjustly against employees who oppose practices or acts forbidden by the LAD. The LAD's fee-shifting provision, *N.J.S.A.* 10:5–27.1, was intended to assure that counsel for litigants like plaintiff will receive reasonable compensation for services reasonably rendered to effectuate the LAD's objectives, even if the contingent fee payable based on the damages recovered did not constitute a reasonable fee for those services.

Notwithstanding our rejection of a proportionality rule under our fee-shifting statutes, we reiterate the concern that we expressed in *Rendine, supra,* that a trial court should carefully and closely examine the lodestar-fee request to verify that the attorney's hours were reasonably expended. 141 *N.J.* at 334–337, 661 *A.*2d at 1226–1227. Fee-shifting cases are not an invitation to prolix or repetitious legal maneuvering. Courts should consider the extent to which a defendant's discovery posture, or a plaintiff's, has caused any excess expenses to be incurred. Courts reviewing fee allowances should assess what legal services reasonably competent counsel would consider as required to vindicate the protected legal or constitutional rights. Neither the tortoise nor the hare should be the model for compensation.

The trial court's responsibility to review carefully the lodestar fee request is heightened in cases in which the fee requested is disproportionate to the damages recovered. In such cases the trial court should evaluate not only the damages prospectively recoverable and actually recovered, but also the interest to be vindicated in the context of the statutory objectives, as well

as any circumstances incidental to the litigation that directly or indirectly affected the extent of counsel's efforts. Based on that evaluation, if the court determines that the hours expended "exceed those that competent counsel reasonably would have expended to achieve a comparable result, a trial court may exercise its discretion to exclude excessive hours from the lodestar calculation." *Id.* at 336, 661 *A*.2d at 1227.

## IV

Defendants contend that the failure by plaintiff's counsel to keep and produce contemporaneous time records also supports the trial court's decision to limit the fee award to the amount payable under the contingent-fee agreement. The certification in support of plaintiff's counsel-fee application includes this assertion:

> As a result of a personnel problem, the time sheets recorded for most of this case were no longer available to Plaintiff's counsel. Therefore, time for those periods was reconstructed from the file. Since that is my problem, not defendants', I have used conservative estimates throughout. This absence will serve to the advantage of defendants, since many hours of work are simply forgotten years later. For example, while there is no doubt there were many phone calls among counsel, few of those phone calls are billed.

The use of contemporaneously recorded time records is the preferred practice to verify hours expended by counsel in connection with a counsel-fee application. *Webb v. Board of Educ.*, 471 *U.S.* 234, 238 n. 6, 105 *S.Ct.* 1923, 1926 n. 6, 85 *L.Ed.*2d 233, 239 n. 6 (1985). Indeed, we would assume that applications for counsel fees invariably would be accompanied by contemporaneously recorded time records that fully support the calculation of hours expended by all attorneys who participated in the matter. Nevertheless, even those federal courts that mandate contemporaneous time records by decision, see *Ramos v. Lamm,* 713 *F.*2d 546, 553 (10th Cir.1983), or by local rule, see *Alberti v. Klevenhagen,* 896 *F.*2d 927, 931 (5th Cir.), *modified on other grounds,* 903 *F.*2d 352 (5th Cir.1990), acknowledge that fee applications for services rendered prior to the court's mandate may be supported by reconstructed time records. *Ramos, supra,* 713 *F.*2d at 553 n. 2; *Alberti, supra,* 896 *F.*2d at 931. Although reliance on recon-

structed records is strongly disfavored, we infer from counsel's certification that contemporaneous time records were maintained but were unavailable because of an exceptional circumstance. We will not preclude an award of counsel fees based on reconstructed time records; however, the trial court on remand will scrutinize with meticulous care counsel's calculation of hours expended to verify the reasonableness of the hours reflected by the reconstructed records. The trial court should exercise its discretion to exclude from the lodestar calculation hours for which counsel's documentary support is marginal.

## V

We affirm the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with this opinion, and with our opinion in *Rendine, supra,* 141 *N.J.* 292, 661 *A.*2d 1202.

*For affirmance and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.