748 A.2d 642

SAMANTHA YAKAL–KREMSKI, AN INFANT, BY HER MOTHER AND NATURAL GUARDIAN, LINDA YAKAL–KREMSKI, AND LINDA YAKAL–KREMSKI, INDIVIDUALLY, PLAINTIFFS–RE-SPONDENTS, v. DENVILLE TOWNSHIP BOARD OF EDU-CATION, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 8, 2000—Decided April 12, 2000.

568

Before Judges KING, LEFELT and CARCHMAN.

*Dolan and Dolan,* attorneys for appellant, (*Robert T. Morgenstern,* of counsel; *John P. Morgenstern,* on the brief).

*Bongiovanni, Collins & Warden,* attorneys for respondents (*Phillip C. Wiskow,* on the brief).

The opinion of the court was delivered by

CARCHMAN, J.A.D.

Defendant Denville Board of Education appeals from the trial court's grant of attorneys' fees pursuant to *N.J.S.A.* 59:9–5, to plaintiff Samantha Yakal–Kremski. Plaintiff, six at the time of the accident, fell and cut her knee while on the playground at her school. The laceration required eight stitches and left a scar on her knee. She subsequently filed an action against the school board under the Tort Claims Act, *N.J.S.A.* 59:9–1 to –7, seeking damages for her injuries. At trial, the jury found the school to be liable, but awarded only $1000 in damages. The trial judge entered judgment on liability, but set aside the damage award and ordered a new trial on damages. At the second trial, the jury awarded plaintiff $2000 in damages. The trial court subsequently

granted plaintiff's motion for attorney's fees, awarding plaintiff $10,500 in fees and $491 in costs.

Defendant appeals and argues that the trial judge abused her discretion in awarding attorneys' fees, and particularly in awarding fees under *N.J.S.A.* 59:9-5, in an amount so clearly disproportionate to the amount of the verdict. We conclude that the trial judge did not engage in the balancing test required when imposing such fees and failed to consider the policy of such statute seeking to compensate plaintiff fully for her economic loss. We reject plaintiff's contention that this was a lawsuit of significant public importance that resulted in wholesale change to the playground. Accordingly, we reverse the judgment awarding such fees and, exercising original jurisdiction, *R.* 2:10-5, award counsel fees of $3000 and taxed costs and expert fees of $100.

These are the relevant facts. On May 7, 1993, plaintiff tripped and fell on the playground at the Riverview School in Denville. The accident occurred one week before plaintiff's seventh birthday. She was taken to the hospital where she received eight stitches to her lacerated knee. Plaintiff only missed school on the day of the accident and her ability to engage in gym class or other activities was limited for two weeks until her stitches were removed. Fortunately, she currently has no limitations on her ability to engage in physical activity.

Plaintiff's knee was scarred as a result of the fall. The scar has been described as

> about a half an inch below the lateral midline at its highest point and about an inch below the lateral midline at its lowest point. It is a tea cup handle shaped scar that is lower at each extreme and highest in the middle. It is noticeably white compared to the surrounding skin. . . .

In the summer, plaintiff experiences embarrassment because the scar does not tan as does the rest of her leg. As a result, plaintiff and her parents sought to have the scar, which is probably permanent, removed. The cost of such surgical removal was estimated to be between $8000 and $10,000.

Plaintiff, through her mother, filed a complaint against defendant seeking damages for the injuries plaintiff sustained in the fall on the playground. The matter was tried before a jury which found 1) defendant did not provide negligent supervision; 2) the playground area created a substantial risk of injury; 3) the dangerous condition of the playground was the proximate cause of the accident; 4) the dangerous condition of the playground created a foreseeable risk of injury; 5) defendant had constructive notice of the dangerous condition; 6) the conduct of defendant was palpably unreasonable; 7) that $1000 would fairly compensate plaintiff for her economic damages and future medical expenses; and 8) plaintiff did not suffer a permanent disfigurement. Plaintiff moved for judgment notwithstanding the verdict and for additur, or, alternatively, for a new trial on damages.

The trial judge ordered a new trial on damages and, thereafter, entered judgment for plaintiff on the issue of liability only. The second jury returned a verdict, finding that plaintiff was not permanently disfigured, that a reasonable person in her position would not seek surgical revision of her scar, and awarded plaintiff $2000 in damages for past and future injury and $1000 for damages for past and future pain and suffering. The trial judge entered judgment in favor of plaintiffs in the amount of $2000 setting aside the $1000 award for past and future pain and suffering, noting this amount was not recoverable pursuant to *N.J.S.A.* 59:9–2(d) (permitting recovery of damages for pain and suffering only where a plaintiff has suffered permanent injury or disfigurement).

Plaintiff filed a motion for judgment notwithstanding the verdict and for additur, or, alternatively, for a new trial on the issue of damages and/or attorneys' fees. The trial judge found that the jury verdict, while certainly low, did not shock the judicial conscience. She did, however, award to plaintiff's counsel $100 as an expert fee, $391 in costs, and $10,500 in attorneys' fees for sixty hours of work.

*N.J.S.A.* 59:9–5 vests a trial judge with discretion to award attorneys' fees to successful plaintiffs who sue under the Tort Claims Act. No recovery is permissible, however, if damages are awarded for pain and suffering. The statute states, in pertinent part:

> In any action brought against a public entity or a public employee under this act, the court may, in its discretion, award a successful claimant (a) costs ordinarily allowable in the private sector (b) expert witness fees not exceeding a total of $100.00 and (c) reasonable attorney's fees; provided however that there shall be no such recovery in any case where damages are awarded for pain and suffering.
>
> [*Ibid.*]

The purpose and policy underlying this fee-shifting statute is expressed in the comment to *N.J.S.A.* 59:9–5:

> With the exception of aggravated circumstances where pain and suffering is allowed, the underlying policy as to damages in this act is to reimburse an injured claimant to the full extent of his present and projected economic loss. Consistent with this thesis, discretion is vested in the trial judge to compensate a successful claimant against either a public entity or a public employee for the reasonable amount of his attorney's fees and for $100 worth of his expert witness fees. This is done in order to insure that a claimant is compensated for virtually all of his economic loss.

We recognize at the outset that the structure of the allowable jury award—$2000 for past, present and future disability—triggered the discretionary award of attorneys' fees. Accordingly, the issue raised here is whether the trial judge abused her discretion by granting counsel fees in this particular case. *See, e.g., Whitfield v. Whitfield,* 315 *N.J.Super.* 1, 16, 716 *A.*2d 533 (App.Div.1998).

Of relevant consideration is that plaintiff and her counsel entered into a contingency fee agreement. In *Furey v. County of Ocean,* 287 *N.J.Super.* 42, 46, 670 *A.*2d 120 (App.Div.), *certif. denied,* 144 *N.J.* 379, 676 *A.*2d 1094 (1996), we addressed the availability of attorneys' fees to plaintiffs who enter into contingency fee agreements with their counsel and are successful under the Tort Claims Act. We held that "the existence of a contingency fee retainer should not prevent the exercise of statutory discretion by the judge in assessing a reasonable award of fees pursuant to *N.J.S.A.* 59:9–5." *Ibid.; see also Kolczycki v. City of East Orange,* 317 *N.J.Super.* 505, 520–21, 722 *A.*2d 603 (App.Div.1999).

In addressing the availability of counsel fees in *Furey*, we noted that allowing fees in that particular case would permit "the decedent's widow and daughter [to] more fully recover their economic loss caused by the death, as the award [would] relieve them of all or part of the *contingent fee* they are subject to on the recovery of their loss." *Furey, supra,* 287 *N.J.Super.* at 45, 670 *A.*2d 120 (emphasis added).

In remanding for a determination of counsel fees in *Furey*, we identified a number of considerations that should guide a trial judge in exercising the discretionary grant of fees in contingency cases litigated under the Tort Claims Act. The trial judge is to consider " 'the underlying policy as to damages' of the Tort Claims Act, recognizing that it is to fully reimburse the economic loss of the claimant." *Id.* at 46, 670 *A.*2d 120. Additionally, the trial judge should remain cognizant of the fact that any costs imposed on a government entity are "ultimately borne by the public." *Ibid.* Thus, "the judge has the task in exercising discretion of fulfilling the statutory purpose in awarding reasonable attorney's fees which are sufficient to compensate the attorney for the work performed, while seeking neither to encourage nor discourage attorneys from undertaking meritorious causes of action against the governmental entity or its employees." *Ibid.* Of critical importance, the trial judge must engage in a balancing test, considering the public interest in vindicating plaintiffs' injuries in conjunction with the "limited public funds ... available for such purposes." *Ibid.*

In a Law Division action decided prior to *Furey*, Judge Villanueva held that plaintiffs who were injured by liquid which escaped from bursting hydraulic hoses on city sanitation trucks were not entitled to attorneys' fees under *N.J.S.A.* 59:9–5. *Nickerson v. City of Newark,* 220 *N.J.Super.* 284, 288, 531 *A.*2d 1095 (Law Div.1987). The judge concluded that the purpose of the statute would not be served by awarding attorneys' fees in that case, where plaintiffs and their counsel had a contingent fee agreement, because it would "in no way compensate the plaintiffs

for their economic loss but would be a windfall to plaintiffs' attorneys." *Ibid.*

Defendant contends here that the trial judge's award of attorney's fees to plaintiff's counsel constitutes a windfall and is an abuse of discretion. Plaintiff counters that she will suffer an economic loss if the decision below is reversed because plaintiff will then be required to pay the costs out of her minimal judgment, leaving her with no recovery.

[1] In deciding to grant counsel fees, the trial judge simply stated, "With regard to the issue of counsel fees and costs, the Court finds that an award of such fees and costs is appropriate." She failed to engage in the balancing test required under the statute or to set forth a factual basis for her conclusions. *See Filippone v. Lee*, 304 *N.J.Super.* 301, 306, 700 *A.*2d 384 (App.Div. 1997) (noting the "critical importance" of the trial court's obligation to include findings or reasons when deciding motions). She did recognize, while commenting during the motion for a new trial, that the damage award was "certainly a low verdict" and stated, "clearly, I would not have approved a $2,000 settlement in this case," but that was not the issue on an application under *N.J.S.A.* 59:9–5. While the statute is designed to reimburse a plaintiff to the full extent of an economic loss, an award under *N.J.S.A.* 59:9–5 is not a basis for compensating for or correcting a low jury verdict by granting disproportionate fees. The issues are distinct, and the policy issues decidedly different. Obviously, the award of fees benefits the litigator while the extant low verdict still undercompensates the litigant.

[2] We recognize that plaintiff incurred and will be required to pay the costs of litigation that far exceed her damage award of $2000. To allow consideration of litigation costs to be considered as part of economic loss conflates an element of damages with costs of litigation. If the economic loss were simply reflecting the costs of prosecuting the underlying cause of action, the concept of "economic loss" would lose all meaning. Economic loss was, among other things, equated to the $8000 to $10,000 necessary to

remove plaintiff's scar. The jury clearly rejected that claim in its verdict. We also question the equities of requiring defendant to bear the costs of defending this case, as well as plaintiffs' costs, when the damages awarded were minimal and plaintiff's counsel seemingly took a substantial risk in agreeing to represent plaintiff on a contingency basis.[1]

Plaintiff argues that while the economic recovery here was small, the suit served other purposes, claiming she has " 'saved' approximately 900 children from injury (150 per year from 1993 to the present)" because of changes made to the playground as a result of this lawsuit. Plaintiff concedes that she was aware from the outset that the case was not worth a lot of money, but that she wanted to proceed because she "had a sincere desire to have the Riverview School's lunchtime procedures changed."

Defendant refutes plaintiff's contention that this lawsuit resulted in remedial measures taken with respect to the condition of the playground. Rather, defendant contends that the renovation of the playground was already underway by the time of the incident, essentially admitting that such construction may actually have been the cause of plaintiff's accident. Moreover, plaintiff's counsel acknowledged in a certification that the changes in the lunchtime procedures on the playground may have been "a coincidence" and unrelated to this lawsuit.

■ We find plaintiff's assertion about the intent of this action to be problematic. The quandary created by the counsel fee award here is that plaintiff's acknowledgment of limited recovery for her injuries is countered by an asserted altruism that the lawsuit was designed to protect other children from the alleged physical deficiencies of the playground. We cannot conclude on this record, however, that the expenditure of $4500 for expert medical witnesses was truly intended to promote the latter objective. Moreover, the Legislature precluded recovery of more than

---

[1] The record before us suggests that the actual burden on plaintiff is minimal as her insurance coverage assumed the cost of most of the medical expenses.

$100 for expert fees. Any inclusion in the counsel fee award of such fees is contrary to this legislative pronouncement. We question why plaintiff expended in excess of $8500 for medical disbursements in a case that she admits "was not worth a lot of money." [2] This is the type of consideration that must be part of the balancing test required under the statute. The trial judge made no mention of this apparent anomaly.

In sum, we conclude that the trial judge mistakenly exercised her discretion in granting the quantum of counsel fees in this case. Even though we have eschewed reliance on a contingent fee agreement as the determinative factor in assessing fees, it is still a relevant consideration in measuring the amount of fees to be awarded. Our decision in *Furey* focuses on recoupment of the contingent fee and does not offer an open checkbook to a litigant to incur costs at will without an appropriate assessment of the risks involved in the case. Rather, *Furey* stands for the proposition that a contingent fee agreement standing alone will not bar a plaintiff from recovering reasonable fees under the Tort Claims Act. What is apparent here is that plaintiff understood early on that the opportunity for a significant recovery was limited, a prophesy that proved accurate, yet now argues that she should be "made whole" because of the costs involved.

Not only is the forecast of recovery important but the actual result is a relevant factor to an award of counsel fees. *North Bergen Rex Transport, Inc. v. Trailer Leasing Co.,* 158 *N.J.* 561, 570–72, 730 *A.*2d 843 (1999) (noting that a prevailing party's degree of success should be considered when determining a reasonable attorney's fee award); *Abbamont v. Piscataway Township Bd. of Educ.,* 314 *N.J.Super.* 293, 309, 714 *A.*2d 958 (App.Div. 1998), *aff'd o.b.,* 163 *N.J.* 14, 746 *A.*2d 997 (1999) ("One of the factors a court should consider in determining the amount of an attorneys' fee award is the degree of success the plaintiff has

---

[2] Counsel's certification reveals that Drs. Lucenko and Carolla charged $1500 each for their trial testimony.

achieved in the litigation."). Even when a statute mandates that counsel fees are to be awarded to a prevailing party, the prevailing party's degree of success should be considered in determining the amount of fees to be awarded. *See, e.g., Branigan v. Level on the Level, Inc.,* 326 *N.J.Super.* 24, 31, 740 *A.2d* 643 (App.Div.1999) (holding that homeowners who successfully sued under the Consumer Fraud Act but incurred no damages were entitled to reasonable fees under the statute); *see also Chattin v. Cape May Greene, Inc.,* 243 *N.J.Super.* 590, 616, 581 *A.2d* 91 (App.Div.1990), *aff'd o.b.,* 124 *N.J.* 520, 591 *A.2d* 943 (1991); *cf. Szczepanski v. Newcomb Med. Ctr.,* 141 *N.J.* 346, 366, 661 *A.2d* 1232 (1995) (declining to adopt a requirement of proportionality between counsel fees and damage awards under fee-shifting statutes, but noting that such awards should be carefully scrutinized). Although the Act authorizes trial judges to exercise discretion in awarding attorneys' fees to successful claimants, in doing so "courts must look at the level of success achieved in the litigation." *Branigan, supra,* 326 *N.J.Super.* at 31, 740 *A.2d* 643; *see also Rendine v. Pantzer,* 141 *N.J.* 292, 336, 661 *A.2d* 1202 (1995). Indeed, "[a]lthough there is no requirement that an award of attorneys' fees be proportionate to damages, 'the amount of damages a plaintiff recovers is certainly relevant to the amount of attorney's fees to be awarded.'" *Chattin, supra,* 243 *N.J.Super.* at 616, 581 *A.2d* 91 (quoting *Riverside v. Rivera,* 477 *U.S.* 561, 574, 106 *S.Ct.* 2686, 2694, 91 *L.Ed.*2d 466, 479 (1986)). Moreover, "[c]ourts reviewing fee allowances should assess what legal services reasonably competent counsel would consider as required to vindicate the protected legal or constitutional rights." *Szczepanski, supra,* 141 *N.J.* at 366, 661 *A.2d* 1232. Finally, although stated by the Supreme Court in the context of fee-shifting under the New Jersey Law Against Discrimination, we conclude that the direction given to trial courts in that context is similarly applicable here: "[T]he trial court should evaluate not only the damages prospectively recoverable and actually recovered, but also the interest to be vindicated in the context of the statutory objectives, as well as any circumstances incidental to the litigation that

directly or indirectly affected the extent of counsel's efforts." *Id.* at 366–67, 661 *A.*2d 1232. Again, this is within the scope of the balancing process which must be undertaken by the trial judge awarding such fees.

We note also that plaintiff's statement of medical disbursements, which as we have noted exceeds $8,500, includes fees for expert witnesses. It is unclear from the record whether this is cost of treatment or fees incurred for experts. In any event, the statute addresses this issue directly and provides that expert fees are not to exceed a total of $100. *N.J.S.A.* 59:9–5. These costs in excess of $100 are not recoverable under the statute. Even though plaintiff may ultimately have to bear the expert fees in excess of $100, this is not a matter of judicial discretion but legislative fiat.

We are of the view that we must exercise original jurisdiction and conclude this litigation. *R.* 2:10–5. *See, e.g., DeBrango v. Summit Bancorp,* 328 *N.J.Super.* 219, 230, 745 *A.*2d 561 (App. Div.2000); *Chestone v. Chestone,* 322 *N.J.Super.* 250, 260, 730 *A.*2d 890 (App.Div.1999). Accordingly, considering the factors that we have identified, which include the policy of making plaintiff whole, the contingent fee agreement, the time expended, the recognition that the public must ultimately assume the costs of any fees awarded, the known risk of a modest recovery, the ultimate result achieved and the repairs of the playground, we conclude that attorney's fees in the amount of $3000 are appropriate. To this shall be added $100 for expert fees and the costs of suit to be taxed.

The judgment of the Law Division is reversed and an order will issue consistent with this opinion.