AMERICAN HARDWARE MUTUAL INSURANCE COMPANY,

v.

HARLEY DAVIDSON OF TRENTON, INC.; Frank Courvoisier; Linda Courvoisier,

v.

Harley Davidson of Trenton, Inc., Third–Party Plaintiff/Fourth–Party Defendant,

v.

Evans, Osborne & Kreizman, A Law Partnership; Harry V. Osborne; Harry S. Evans; Joel N. Kreizman; Joel N. Kreizman; Mary O'Keefe Massey; Kevin E. Hoffman, Third-Party-Defendants/Fourth-Party-Plaintiffs.

Harley Davidson of Trenton, Inc.,

v.

American Hardware Mutual Insurance Company,

American Hardware Mutual Insurance Company, Appellant.

American Hardware Mutual Insurance Company,

v.

Harley Davidson of Trenton, Inc.; Frank Courvoisier; Linda Courvoisier,

v.

Harley Davidson of Trenton, Inc., Third–Party Plaintiff/Fourth–Party Defendant,

v.

Evans, Osborne & Kreizman, A Law Partnership; Harry V. Osborne; Harry S. Evans; Joel N. Kreizman; Joel N. Kreizman; Mary O'Keefe Massey; Kevin E. Hoffman, Th ird-Party-Defendants/Fourth-Party-Plaintiffs.

Harley Davidson of Trenton, Inc.,

v.

American Hardware Mutual Insurance Company,

Harley Davidson of Trenton, Inc., Appellant.

American Hardware Mutual Insurance Company,

v.

Harley Davidson of Trenton, Inc.; Frank Courvoisier; Linda Courvoisier,

v.

Harley Davidson of Trenton, Inc., Third–Party Plaintiff/Fourth–Party Defendant,

v.

Evans, Osborne & Kreizman, A Law Partnership; Harry V. Osborne; Harry S. Evans; Joel N. Kreizman; Joel N. Kreizman; Mary O'Keefe Massey; Kevin E. Hoffman, Th ird-Party-Defendants/Fourth-Party-Plaintiffs.

Harley Davidson of Trenton, Inc.,

v.

American Hardware Mutual Insurance Company,

Harley Davidson of Trenton, Inc., Appellant.

Nos. 03–4170, 03–4348, 04–1398.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to LAR 34.1(a) Jan. 21, 2005.

Decided Feb. 22, 2005.

John T. Coyne, McElroy, Deutsch, Mulvaney & Carpenter, Morristown, NJ, Kenneth S. Javerbaum, Javerbaum, Wurgaft, Hicks & Zarin, Springfield, NJ, for Appellants.

David P. Corrigan, Hobbie, Corrigan, Bertucio & Tashjy, Eatontown, NJ, for Appellees.

Before ALITO, McKEE, and SMITH, Circuit Judges.

OPINION OF THE COURT

PER CURIAM.

American Hardware Mutual Insurance Company appeals the District Court's conclusion that it failed to act in good faith under New Jersey law when, despite the prospect of settling a third-party claim within the limit of its insured's policy, American Hardware did not negotiate the claim. The District Court held American Hardware liable for the entire amount awarded by the jury in the underlying negligence action, which far exceeded the policy limits. The Court later awarded the insured, Harley Davidson of Trenton ("HDT"), attorney's fees according to the lodestar formula. HDT cross-appeals the District Court's refusal to award attorney's fees based on HDT's contingency fee arrangement with its counsel or to enhance the lodestar calculation. For the reasons that follow, we (1) affirm the District Court's excess verdict judgment, and (2) reverse the District Court's refusal to enhance the lodestar calculation, and remand for a recalculation of the attorney's fees award.

The District Court exercised diversity jurisdiction, 28 U.S.C. § 1332, and this Court has final order jurisdiction, 28 U.S.C. § 1291. Our review of the District Court's interpretation and application of New Jersey bad faith insurance law is plenary. *Coleman v. Kaye*, 87 F.3d 1491, 1497 (3d Cir.1996). We review the reasonableness of the District Court's award of attorney fees for abuse of discretion, *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir.1990), unless the question is whether the District Court applied the correct standard, in which case our review is plenary. *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 508 (3d Cir.1992).

### Factual Background

Because we write only for the parties, we will limit our recitation of the facts and procedural history to those central to our decision.

Frank Courvoisier suffered a debilitating injury in 1993 when he crashed his Harley Davidson motorcycle while attempting to turn a corner. Courvoisier claimed that he crashed because the rear wheel froze when the bike slipped into "false neutral." Courvoisier attributed the malfunction to HDT mechanics' overfilling the chain case of his bike with lubricant. Courvoisier sued HDT in New Jersey Superior Court. At the time of the accident, HDT held a $500,000 garage liability policy with American Hardware.

Pursuant to its duty to defend, American Hardware hired Harry Osborne to defend HDT. Several months before trial, Courvoisier demanded $497,000 to settle his claim. At the time, Osborne felt that the defense had the stronger position, but noted that "the case certainly [had] a verdict potential in excess of the policy limits." When American Hardware rejected the demand and chose to defend liability on proximate cause grounds, HDT, fearing an excess verdict, implored American Hardware to settle with Courvoisier within the policy limits. During the trial, American Hardware offered Courvoisier $100,000, which was the maximum the claims manager, Douglas Metz, was authorized to offer. Courvoisier rejected the $100,000 offer.

At the close of the evidence, Osborne estimated that a verdict against HDT had a 30%–40% probability, an increase from his 20% estimate before trial. Further, Osborne told Metz that Courvoisier would likely settle for $350,000, and that an offer from American Hardware in the $200,000–$250,000 range would be reasonable. American Hardware never moved off its $100,000 offer, nor did Metz seek authorization to increase the insurer's offer. American Hardware never attempted to initiate negotiations with Courvoisier, and Courvoisier never lowered his stated demand of $497,000.

On July 31, 1998, the jury returned a verdict for Courvoisier for $1.4 million. American Hardware paid the $500,000 policy limit. On May 4, 2000, American Hardware filed suit against HDT in the United States District Court for the District of New Jersey seeking a declaration that the insurer was not liable for the excess verdict. HDT contended that American Hardware's refusal to settle the underlying claim within the policy limits evidenced bad faith, and that under New Jersey law, American Hardware should be held to pay the excess verdict notwithstanding the policy limit.

Following a one-day bench trial, the District Court, in a thorough and well-reasoned opinion, determined that American Hardware had failed to make a good faith effort to settle Courvoisier's claim. In the District Court's view, American Hardware "simply gambled with the insured's money and lost." Having acted contrary to New Jersey common law as explicated in *Rova Farms Resort Inc. v. Investors Ins. Co. of Amer.*, 65 N.J. 474, 323 A.2d 495 (1974), the District Court held American Hardware liable for the full amount of Courvoisier's judgment.

### Bad Faith

American Hardware appeals on two principle grounds. First, although American Hardware does not dispute that *Rova Farms* is applicable to this case, it contends that the District Court erroneously applied that decision. Second, American Hardware argues that the District Court erred in refusing to apply the rule of *Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445

(1993), which would have protected it from liability. Under *Pickett*, an insurer may not be held liable for excess judgments when it had "fairly debatable" reasons for not settling.

*Rova Farms* was a third-party action involving a man who was paralyzed after diving into murky water he thought was much deeper than it was. The insurer, Investors, over the protestations of the insured which feared an excess verdict, offered only $15,000 of a $50,000 policy limit, and opted instead to contest liability at trial. Investors refused to increase its offer when the evidence in the trial appeared to suggest a greater likelihood that the insured would be found liable. The jury returned a verdict of $225,000. Investors paid the policy limit and Rova Farms paid the excess judgment. On appeal of Rova Farms' bad faith action to recover its payment of the excess, the New Jersey Supreme Court put the onus of commencing settlement negotiations squarely on the insurer:

> We, too, hold that an insurer, having contractually restricted the independent negotiating power of its insured, has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage. *Rova Farms*, 323 A.2d at 496.

The New Jersey Supreme Court also declared:

> [Where] any adverse verdict is likely to exceed the policy limit, the boundaries of good faith become more compressed in favor of the insured, and the carrier can justly serve its interests and those of its insured only by treating the claim as if it alone might be liable for any verdict which may be recovered. *Rova Farms*, 323 A.2d at 498.

■ Applying *Rova Farms* to the handling of Courvoisier's claim, we agree with the District Court that American Hardware acted in bad faith under New Jersey law. First, American Hardware failed in its duty to actively negotiate Courvoisier's claim. American Hardware's $100,000 take-it-or-leave-it offer did not constitute good faith settlement negotiations. Contrary to American Hardware's characterization in its argument to this Court that Couvoisier remained firm in his demand of $497,000, Metz' notes taken during the trial indicate that Courvoisier was "firm at $250–350K." What American Hardware now characterizes as a $397,000 gulf between its offer and Courvoisier's demand is more rhetorical than real. Indeed, the evidence suggests that $250,000 may have been common ground for the parties, yet American Hardware chose not to explore the possibility of settling the claim.

Second and related, we have little difficulty in concluding that American Hardware failed to "treat[ ] the claim as if it alone might be liable for any verdict which may be recovered." *Rova Farms*, 323 A.2d at 498. By Osborne's calculation at the close of evidence, the expected value of Courvoisier's claim was considerably greater than American Hardware's $100,000 offer, yet the insurer made no move to increase its offer. American Hardware surely took comfort in the $500,000 policy limit. *Rova Farms'* good faith standard does not demand that an insurer settle a claim for more than it believes it is worth. But it does require the insurer to diligently seek a possible settlement to protect the larger interest of its insured. *Rova Farms*, 323 A.2d at 505.

American Hardware attempts to distinguish *Rova Farms* by arguing that an excess verdict was much more likely in that case than it was here, and asks us to apply the "fairly debatable" test of *Pickett v. Lloyd's*, 131 N.J. 457, 621 A.2d 445 (1993). In *Pickett*, the insurer took almost a year to pay a simple claim, forcing the

insured claimant out of work for many months at the loss of his seniority. *Pickett* was a bad-faith refusal to pay case that established a lower standard of good faith which insurers must meet in such cases. The New Jersey Supreme Court held that an insurer can deny payment to its insured if a claim is "fairly debatable." *Id.* at 453–54.

Whether HDT would be held liable for Courvoisier's injuries *was* "fairly debatable," but in the context of a third-party claim with a possibility of an excess verdict, *Pickett* supplies only part of the equation. The "fairly debatable" standard is analogous to the probability liability will attach in a third-party claim, but it does not consider the likelihood of an excess verdict. A third-party claim that may exceed the policy limit creates a conflict of interest in that the limit can embolden the insurer to contest liability while the insured is indifferent to any settlement within the limit. This conflict is not implicated when the insured is a first-party beneficiary, where the claimant and the insurer are in an adversarial posture and the possibility of an excess verdict is absent. *Rova Farms*, not *Pickett*, protects insureds who are relegated to the sidelines in third-party litigation from the danger that insurers will not internalize the full expected value of a claim due to a policy cap.

We conclude that the *Rova Farms* standard governs this case. Regarding an insurer's choice to litigate liability when a settlement within the policy limit is possible and a verdict might be in excess of the policy limit, the *Rova Farms* court wrote, "[A]s to liability, the question is not whether the carrier, its attorney, or the insured considers a defendant liable but what the jury could be justified in finding from the evidence available and adduced." *Rova*

*Farms*, 323 A.2d at 504. The *Rova Farms* rule is thus: (1) if a jury could find liability, (2) where the verdict could exceed the policy limit, and (3) the third-party claimant is willing to settle within the policy limit, then (4) in order to be deemed to have acted in good faith, the insurer must initiate settlement negotiations and exhibit good faith in those negotiations. American Hardware was obligated to initiate settlement negotiations and did not; therefore it acted in bad faith and is liable for the excess verdict.

### Attorney's Fees

█ Following the District Court's decision in the declaratory judgment action, Courvoisier and HDT each applied for attorney's fees and costs. New Jersey Court Rule 4:42–9(a)(6) allows attorney's fees to be included in the taxed costs in an "action upon a liability or indemnity policy of insurance, in favor of a successful claimant."[1] The District Court granted HDT $83,710 in attorney's fees. HDT appeals the District Court's refusal to calculate its attorney's fees using the contingent fee arrangement entered into by HDT and its counsel. In the alternative, HDT argues that a multiplier should have been applied to the lodestar formula to compensate its counsel for the risk of nonpayment they accepted as part of its contingency fee arrangement in the event HDT had lost the declaratory judgment action.

HDT seeks $330,000 in contingent attorney's fees. HDT argues that because its retainer agreement called for its attorneys, if successful, to be paid one-third of the amount they saved HDT by not having to pay the excess verdict, and nothing if they lost, American Hardware should be held to pay attorney's fees based on the contingency fee calculation under the fee-shifting

---

1. Because HDT and not Courvoisier was the claimant, the District Court denied Courvoisier's application. Courvoisier does not appeal that ruling.

statute. HDT cites no authority even remotely similar for calculating attorney's fees in this way, and the District Court was correct to apply New Jersey's lodestar formula in calculating the proper amount of attorney's fees. *See Szczepanski v. Newcomb Med. Ctr.,* 141 N.J. 346, 661 A.2d 1232, 1236 (1995) (terming the lodestar calculation the "first and most important step in the process" of "determining a reasonable counsel fee under state fee-shifting statutes").

■ We believe, however, that the District Court should have enhanced the lodestar calculation pursuant to *Rendine v. Pantzer,* 141 N.J. 292, 661 A.2d 1202 (1995). *Rendine* directed courts to "consider whether to increase [the lodestar] fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." *Id.* at 1228. Although *Rendine* concerned a different provision of New Jersey law, we predict that the New Jersey Supreme Court would extend *Rendine* enhancements to bad faith actions predicated on *Rova Farms,* and that the award here should be enhanced accordingly. *See id.* at 1331 ("We conclude that contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee, with the enhancement in typical contingency cases ranging between twenty and thirty-five percent of the lodestar."). We will therefore remand this matter so that the District Court may, consistent with the foregoing opinion, recalculate its attorney fee award to include an appropriate enhancement.