785 A.2d 469 (2001)
345 N.J. Super. 431
Joseph J. SCULLION, Plaintiff-Respondent,
v.
STATE FARM INSURANCE COMPANY and ABC Corporation (a fictitious designation), Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 22, 2001.
Decided December 6, 2001.
*470 *471 Carl Mazzie, Totowa, argued the cause for appellant (Foster & Mazzie, attorneys; Mr. Mazzie, on the brief).
Rosemarie Arnold, Fort Lee, argued the cause for respondent (Rosemarie Biviano, on the brief).
Before Judges PETRELLA and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
In this appeal, we are again confronted with an award of counsel fees in a sum grossly disproportionate to the amount in dispute. The genesis of the law suit that gives rise to the appeal is an accident that occurred on July 3, 1996, between a vehicle operated by defendant Sally Quinlan and owned by defendant Elliot Henslovitz and another unknown automobile. Plaintiff, Joseph J. Scullion, a pedestrian, sustained personal injuries when struck by the Quinlan vehicle. Because plaintiff did not own an automobile, he sought personal injury protection benefits (PIP) from defendant, State Farm Indemnity Company (State Farm).
Ultimately, Rosemarie Arnold, on behalf of plaintiff, filed suit on December 26, 1996, against Henslovitz and Quinlan seeking to recover damages as a result of his injuries. She also sued State Farm, contending that it had not paid plaintiff's PIP bills. Apparently, the PIP dispute involved the bill of a chiropractor, Robert Bado. State Farm took the position that Bado's treatment was not related to the accident.
On June 30, 1997, State Farm propounded interrogatories upon plaintiff. On April 23, 1998, State Farm moved to dismiss plaintiff's complaint for failure to answer interrogatories. On May 15, 1998, an order was entered directing plaintiff to provide answers to PIP interrogatories by June 4, 1998.
At some point, plaintiff's attorney lost contact with plaintiff who apparently moved without notifying counsel. Thus, plaintiff failed to answer the PIP interrogatories. In addition, according to State Farm, on May 17, 1999, plaintiff failed to appear for an independent chiropractic examination with Dr. Lawrence Rosenberg, and, on June 16, 1999, failed to appear for an independent medical examination with *472 Dr. Richard Jacobs. According to State Farm, plaintiff's attorney had originally sent a letter informing it that plaintiff would not attend an independent medical examination until plaintiff's bills were paid.
Unfortunately, a plethora of discovery motions were filed. We need not encumber this opinion by recounting each and every motion. Suffice it to say that there were motions to dismiss, reconsider, and vacate the dismissal.
Meanwhile, during the pendency of the litigation, Bado filed suit against both plaintiff and Arnold. Although not clear from the record, it appears that Arnold had sent a letter to Bado protecting his outstanding bill, representing that it would be paid from the proceeds of the settlement. When the personal injury claim settled, Arnold failed to pay Bado's bill. Consequently, Bado filed suit against plaintiff and Arnold. According to Arnold, she was on maternity leave when the suit was filed. The return of service indicates that the summons and complaint were served upon a receptionist in Arnold's office. Nevertheless, Arnold contends that she was never served with the summons and complaint and further asserts that "no one in the firm had any recollection of ever being served." She filed a motion to vacate the default judgment that had been entered against her, explaining she had not been properly served. However, by that time, Bado had already levied upon her personal bank account in the amount of $4004.97.
Thereafter, Arnold successfully moved to consolidate the suit filed by her with the complaint filed by Bado. Finally, on March 22, 2000, the PIP suit was settled for $4004.97. In addition, the parties agreed that the judge before whom the settlement conference had taken place would determine the amount of fees due Arnold, as well as costs. In support of her application, Arnold submitted an itemized bill, which was not certified. The judge awarded Arnold $28,200.20 in attorney's fees and costs. State Farm sought reconsideration. While the motion for reconsideration was pending, State Farm sent a check to Arnold for $3954.97, in settlement of the PIP claim, which was $50 less than the amount agreed upon. In addition, the check was made payable to Arnold and Bado, despite the fact that Bado had already executed upon the account of Arnold. Thus, Arnold wrote State Farm's attorney, returning the check and requesting that he replace it with one made payable only to her. For some unknown reason, State Farm then sent a check to Arnold for $3314.50, which was $690.47 less than the amount agreed upon in settlement. In any event, the judge subsequently reconsidered and reduced the fee award to Arnold to $19,565.20. Thereafter, Arnold moved to enforce the settlement. That application was granted.
In its appeal, State Farm contends that the motion judge "failed to undertake the appropriate analysis for the award of counsel fees." To some extent, we agree with that contention and are constrained to reverse and remand.
Initially, we note that we are troubled by the conduct of the parties, as well as their respective attorneys, throughout this litigation. What should have been a rather simple, straightforward suit for PIP benefits mushroomed to unfathomable proportions in which counsel fees in excess of $28,000 were initially awarded in litigating a claim of approximately $4000. Unfortunately, this litigation does little to enhance the reputation of the legal profession. Regrettably, this is not the first case in recent years in which we have been called upon to consider an award of counsel fees that is grossly disproportionate to the amount in dispute.
*473 In Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995), the Supreme Court noted that its objective was to set forth standards that inform the exercise of discretion by trial courts called upon to determine counsel fees "while at the same time sharply discouraging collateral litigation of `reasonable fee' issues under feeshifting statutes." The Court specifically noted an "assumption that in the future the need for appellate supervision of counsel-fee awards under fee-shifting statutes will be infrequent." Id. at 345, 661 A.2d 1202. Unfortunately, that is not the case here.
R. 4:42-9(a)(6) allows an award of counsel fees in favor of a successful claimant in an action filed upon a liability or indemnity policy of insurance. Although ordinarily this rule is not applicable to first-party claims, an exception has been made in PIP cases. Brewster v. Keystone Ins. Co., 238 N.J.Super. 580, 586, 570 A.2d 468 (App. Div.1990) (citing Kowaleski v. Allstate Ins. Co., 238 N.J.Super. 210, 216 n. 2, 569 A.2d 815 (App.Div.1990)).
As previously noted, we are concerned that the fee awarded is grossly disproportionate to the amount in dispute. We recognize that there is no absolute requirement that a counsel fee awarded pursuant to a fee-shifting statute or rule be proportionate to the amount recovered. Rendine, supra, 141 N.J. at 336, 661 A.2d 1202; see also Szczepanski v. Newcomb Med. Ctr., Inc., 141 N.J. 346, 366, 661 A.2d 1232 (1995) ("We decline to construe New Jersey's fee-shifting statutes to require proportionality between damages recovered and counsel-fee awards even if the litigation ... vindicates no rights other than those of the plaintiff."). There are times when the plaintiff seeks to vindicate important civil and constitutional rights that are not capable of being valued solely in monetary terms. However, "the trial court's responsibility to review carefully the lodestar fee request," i.e., the number of hours reasonably expended multiplied by a reasonable hourly rate, "is heightened in cases in which the fee requested is disproportionate to the damages recovered." Szczepanski, supra, 141 N.J. at 366, 661 A.2d 1232; accord Rendine, supra, 141 N.J. at 336, 661 A.2d 1202.
The trial court must evaluate not only the amount in dispute, and the damages actually recovered, "but also the interest to be vindicated in the context of the statutory objectives, as well as any circumstances incidental to the litigation that directly or indirectly affected the extent of counsel's efforts." Szczepanski, supra, 141 N.J. at 366-67, 661 A.2d 1232. If, taking these factors into consideration, the judge "determines that the hours expended `exceed those that competent counsel reasonably would have expended to achieve a comparable result, [he or she] may exercise ... discretion to exclude excessive hours from the lodestar calculation.' " Id. at 367, 661 A.2d 1232 (quoting Rendine, supra, 141 N.J. at 336, 661 A.2d 1202). "[T]he focus of that determination is to ascertain what fee is reasonable, taking into account the hours expended, the lawyer's customary hourly rate, the success achieved, the risk of non-payment, and other material factors." Id. at 358-59, 661 A.2d 1202 (citing Rendine, supra, 141 N.J. at 334-45, 661 A.2d 1232).
In determining whether to award counsel fees, a trial court may consider:
(1) the insurer's good faith in refusing to pay the demands; (2) [the] excessiveness of plaintiff's demands; (3) [the] bona fides of one or both of the parties; (4) the insurer's justification in litigating the issue; (5) the insured's conduct in contributing substantially to the necessity [of litigation]; (6) the general conduct *474 of the parties; and (7) the totality of the circumstances.

[Enright v. Lubow, 215 N.J.Super. 306, 313, 521 A.2d 1300 (App.Div.), certif. denied, 108 N.J. 193, 528 A.2d 19 (1987) (citations omitted).]
While the Enright factors are to be considered in making the threshold determination as to whether to award counsel fees, many of those factors are equally applicable in determining the amount of counsel fees to be awarded.
In considering an award of counsel fees, the judge must comply with R. 1:7-4(a) and clearly set forth reasons for the exercise of discretion. Brewster, supra, 238 N.J.Super. at 587, 570 A.2d 468; accord S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 293 N.J.Super. 395, 408, 680 A.2d 1114 (App.Div.1996). Here, initially, no findings of fact or conclusions of law were given. Thus, while this appeal was pending, we entered an order of temporary remand to the motion judge for that purpose. On remand, the judge noted that he had not retained his worksheet and did not file an opinion or decision because it was his understanding that his review of the fee request "was with the consent of both counsel." Thus, he was unable to provide us with his findings and conclusions regarding the amount awarded. While we sympathize with the frustration of the motion judge in being called upon to decide this collateral issue, we are thus constrained to reverse and remand. The absence of a record establishing that a critical analysis of the fee request had been made leads to the conclusion that the fee awarded is not entitled to deferential treatment. Yueh v. Yueh, 329 N.J.Super. 447, 461, 466, 468-69, 748 A.2d 150 (App. Div.2000). In addition, the failure to create a record of the judge's findings of fact and conclusions of law, as required by R. 1:7-4(a), hinders effective appellate review. Kamen v. Egan, 322 N.J.Super. 222, 226, 730 A.2d 873 (App.Div.1999).
We note that in making the application, counsel failed to comply with R. 4:42-9(b), which requires an affidavit of service addressing the factors enumerated by R.P.C. 1.5(a). She merely provided a copy of her bill, which was uncertified. On remand, counsel must comply with the rules governing fee applications.
In addition to considering the factors previously noted, on remand the judge must focus on, and make specific findings regarding, the cause for this protracted litigation. For example, the judge must determine whether plaintiff's attorney initially conditioned his appearance at an independent medical examination upon payment of the bills. N.J.S.A. 39:6A-13(d) entitles an insurance carrier to request a physical examination in order to facilitate its investigation of the claim. Consequently, an applicant for PIP benefits has no right to insist upon payment of the bill as a condition for submitting to an independent examination. Rather, the insurer has the right to request an examination prior to making payment of the bill in order to determine its responsibility. If this litigation was precipitated or prolonged by an arbitrary refusal of plaintiff to submit to a medical examination, that factor must be taken into consideration in determining whether to award counsel fees and in what amount.
In addition, on remand, the judge must determine if Arnold guaranteed payment of Bado's bill from the proceeds of the personal injury recovery, and, if she did, whether she made disbursements without honoring her commitment. If that is the case, the judge must also consider those facts in determining whether to award fees and the amount of fee to be awarded. State Farm should not be required to pay *475 counsel fees to Arnold to reimburse her for services rendered in the Bado litigation if she was at fault for not honoring a guarantee or in not answering a summons and complaint properly served upon her. Likewise, the judge must consider why State Farm sent checks for less than the amount of the settlement and the reasons given for that conduct.
We are sympathetic to the position in which we place the judge. Collateral litigation regarding an entitlement to counsel fees pursuant to cost-shifting statutes or rules taxes the court's resources and deprives other litigants of their right to prompt disposition of their cases. They are forced to wait while attorneys fight over fees. Certainly, this is not desirable. We do not suggest by this opinion that a complete evidentiary hearing is required. However, to some extent, limited evidentiary hearings may be necessary to resolve contested facts. Again, this constitutes a disservice to the judicial system and to other litigants. Nevertheless, it may be necessary.
As previously noted, we are concerned with the gross disproportion between the amount in dispute and the fees ultimately awarded. Without a hearing, we are unable to determine whether the attorneys were at fault, or which attorney may have been at fault. We sense that perhaps both attorneys may have contributed to the situation. We also note our concern with some of the entries set forth in Arnold's uncertified "certification of services." By way of illustration, we note the following entries:

 DATE DESCRIPTION TIME
 ---- ----------- ----
 10/30/96 Correspondence to State Farm Ind. Co. 1.20
 enclosing N. Valley Anesthesiology, PA,
 Sharlin Radiological Assoc. and Englewood
 Pathologists bills, request PIP
 Ledger and EOBs
 * * * *
 1/20/97 Correspondence to Mr. Clemente regarding 2.50
 client's injuries and bills to date;
 compile and copy all medical providers
 records, reports and bills in file to date to
 include correspondence to Mr. Clemente
 * * * *
 1/21/97 Correspondence to State Farm Ind. Co. .40
 enclosing Premier Ortho/Sports Medicine's
 bill, request PIP Ledger and EOB

We have given these illustrations to demonstrate our concern with the hours expended by counsel for what appear to be routine correspondence and preparation of routine pleadings. These are merely examples and demonstrate the need for a critical review of the certification to be supplied by counsel. In addition, we note that on February 14, 2000, Arnold accompanied her client to an independent medical examination with Dr. Rosenberg and seeks reimbursement for five hours. We question the necessity for counsel to accompany her client to an independent medical examination. This is not to say she does not have that right. However, we question whether State Farm should be required to pay for that service. In addition, we note that Arnold sought reimbursement for "File Motions/Order to Show Cause: $375.00" and "Photocopying, Postage, & Telephone: $263.20." Certainly, these vague requests require explanation.
*476 Because the fee award is grossly disproportionate to the amount in dispute, the judge's responsibility to review carefully the lodestar fee request is heightened. Szczepanski, supra, 141 N.J. at 366, 661 A.2d 1232. The judge must carefully and closely examine the lodestar fee request to verify that the attorney's hours were reasonably expended. Id. at 366-67, 661 A.2d 1232. The judge must consider, among other things, "the extent to which the parties' discovery posture caused any excess expenses to be incurred." Id. at 366, 661 A.2d 1232. After all, a fee-shifting case is "not an invitation to prolix or repetitious legal maneuvering." Ibid.
Finally, as previously noted, our Supreme Court does not require proportionality between damage recoveries and counsel-fee awards because consideration must be given to the important civil and constitutional rights that are asserted. Rendine, supra, 141 N.J. at 336, 661 A.2d 1202. We agree that the no-fault law has a public purpose by providing "an efficient and inexpensive method by which persons injured in automobile accidents [may] be reimbursed for out-of-pocket expenses." Zyck v. Hartford Ins. Group, 143 N.J.Super. 580, 591, 364 A.2d 32 (Law Div.1976), aff'd, 150 N.J.Super. 431, 375 A.2d 1232 (App.Div.), certif. denied, 75 N.J. 521, 384 A.2d 501 (1977). While to some extent, this litigation serves that public purpose, we seriously question whether the public has been served by the extent to which this relatively simple, straightforward PIP claim has been litigated. The judge must take that observation into consideration in determining whether to award a counsel fee at all, and the amount of the fee, if any, ultimately awarded. The judge must critically analyze the fee request and determine the amount of time that reasonably should have been expended in obtaining payment of the medical bills. Yueh, supra, 329 N.J.Super. at 466, 468, 748 A.2d 150. In sum, the judge must "scrutinize the fee request in accordance with the spirit and intent of the Court Rules, the statute and the case law," and must, in compliance with R. 1:7-4(a), make findings of fact and conclusions of law. Id. at 469, 748 A.2d 150.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.