**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0901-19

KATHLEEN KELLY,

      Plaintiff-Respondent,

v.

ROLF-DIETER KRENZ,

      Defendant-Appellant.

_____

Argued February 22, 2021 – Decided April 21, 2021

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0905-12.

Karin Duchin Haber argued the cause for appellant (Haber Silver Simpson & Russoniello, attorneys; Karin Duchin Haber, of counsel; Jani Wase Vinick, on the briefs).

Kathleen Kelly, respondent, argued the cause pro se.

PER CURIAM

    After twenty years of marriage, the parties divorced in 2014. This appeal

arises out of the parties' dispute regarding the emancipation of their oldest son,

who has been attending college since August 2016 and is now twenty-three years old. In a September 13, 2019 order, the Family Part judge denied defendant's motion for emancipation and granted plaintiff counsel fees. After reviewing the parties' agreement, we are satisfied the ruling regarding the son's emancipation was correct although for different reasons than those posited by the court.

However, because more than eighteen months have elapsed between the court's order and our review, and the son has now attended college for five years without any realistic certainty of completing his coursework within a reasonable period of time, we remand for further proceedings as directed. We also vacate the award of counsel fees to plaintiff as unsupported by sufficient analysis and reasons.

When the parties were divorced, a property settlement agreement (PSA) was incorporated into the judgment of divorce. The PSA included the following relevant provisions:

### 6. COLLEGE EDUCATION OF THE CHILDREN

6.1 In addition to all other payments required to be made hereunder, the parties also agree to pay for the undergraduate college, junior college, vocational or trade school education of each child of the marriage, with . . . [defendant] paying [sixty percent] and . . . [plaintiff] paying [forty percent] of such expenses, subject to the income floors set forth in Paragraphs 3.2 and 4.4, and provided neither party experiences a

2

dramatic change in his or her financial circumstances. Such payments shall include all necessary charges for application fees, pre-admission standardized tests, tuition, room, board, activity fees, lab fees, books, computers and supplies, transportation at the beginning and end of each semester and school breaks.

. . . .

6.3 It is the anticipation of the parties that the children will complete college in four years of study unless additional time is academically required for the chosen course of study or there is an illness, injury, disability or other extenuating circumstances.

## 7. EMANCIPATION EVENT

7.1 With respect to a child, an emancipation event shall occur or be deemed to have occurred upon the earliest happening of any of the following:

A. Reaching the age of eighteen years, or graduation from high school with subsequent full-time employment, or completion of secondary school without subsequent immediate attendance at college or trade school and engaging in or having the ability to engage in full time employment, upon and after the attaining by the child of eighteen years of age, except and provided that (1) engaging by the child in partial or part-time employment shall not be deemed an emancipation event; (2) engaging by the child in full time employment during vacation and summer periods shall not be deemed an emancipation event unless the child has the ability to engage in full time employment, and no other exception provided in this paragraph apply simultaneously; and (3) if, during the course of such full-time schooling, the child takes up to one year off for employment or travel, the child shall not be deemed

3

emancipated, but the support obligation shall be suspended for the said period of time that the child is not attending school.

B. The completion of undergraduate college education, but in no event beyond the date on which the child reaches age [twenty-three] unless completion of the college education is delayed by injury, illness or disability of the child[.]

. . . .

G. Notwithstanding anything contained in subparagraph A above, an emancipation event shall be deemed deferred beyond the twenty-second birthday of the child only if and so long as the child pursues college education with reasonable diligence and on a normally continuous basis. In no event shall emancipation be delayed beyond the twenty-third birthday of the child unless the delay is caused by injury, illness or disability of the child.

[Emphasis added]

After graduating high school, the parties' son enrolled at Arizona State University. In Fall 2016, the first semester of his freshman year, he registered for five classes worth eleven credits. The son later withdrew from three classes and received a 2.5 GPA for the remaining two courses. In Spring 2017, he registered for four classes worth ten credits but subsequently withdrew from two classes and received a 2.67 GPA for the other two courses. In Fall 2017, the son enrolled in five classes worth thirteen credits but withdrew from one class,

4

earning a 3.0 GPA for the semester. In Spring 2018, he took four classes worth ten credits. He earned a 3.33 GPA, but the D he received in one course was not counted toward his GPA. In Fall 2018, the son enrolled in five classes worth thirteen credits and earned a 2.38 GPA for the semester. In Spring 2019, he took four classes worth twelve credits, achieving a 1.83 GPA. After six semesters – three years – the son had completed fifty credits and had a 2.54 GPA.

In June 2019, defendant filed a motion requesting the court emancipate his son. At the time, the son was twenty-one years old. Defendant argued emancipation was warranted under paragraph 7.1G of the PSA because the son had not pursued his college education "with reasonable diligence and on a normally continuous basis."

According to defendant's certification, if the son continued in the same manner as his first three years of college, it would take him another three-and-a-half years to obtain the 120 credits needed to graduate. Defendant also highlighted additional facts regarding the son's academic performance: he had only completed five classes needed for his major after six semesters; and if he had not been permitted to withdraw from six classes needed for his major, his GPA would have likely fallen below the 2.5 minimum requirement.

A-0901-19

Defendant also informed the court of the son's drug use and extracurricular activities. According to defendant, prior to his college enrollment, the son attended a wilderness program and therapeutic boarding school to address his drug habit and drug use. Defendant further stated that the son regularly used different forms of marijuana, had drugs shipped to defendant's home without his knowledge or permission, and has left drug paraphernalia in plain view of his younger brothers. Defendant also described the numerous amenities at the luxury apartment building the son lived in while at college. According to defendant, his son's friendship circle was comprised of young adults from affluent families who use drugs; he took spring break excursions to Hawaii and Florida; and had a preference for expensive designer clothing and accessories.

Plaintiff, in her certification opposing the motion and supporting her cross-motion, asserted the son had a long history of mental health issues and had been treated for Obsessive Compulsive Disorder (OCD) and anxiety. She explained that her son started smoking marijuana to cope with his OCD and he would get violent when frustrated.

Plaintiff stated after-school drug rehabilitation and therapy was ineffective, so she enrolled him in a therapeutic program designed to help troubled teens and then a therapeutic boarding school. Plaintiff credited these

6

programs with helping the son graduate high school and get accepted into college. Plaintiff blamed his academic struggles on his mental health issues and his desire to enroll in more courses than he could handle.

According to plaintiff, after the filing of this motion, she apprised the college of the son's OCD and other issues. In response, the school's Disability Resource Center (DRC) sent a letter to the son, advising that, "based on the information you have submitted" he was eligible for certain services including requesting a reduced academic load. The letter stated: "Students with disabilities that significantly limit their ability to manage a full-time course load (12 or more credits) may be accommodated by receiving approval to take a reduced course load each semester. Requests for this accommodation will be considered on a semester-by-semester basis."

The DRC also sent a letter in July 2019 to the Registrar, recommending a reduced course load of nine credits for the Fall 2019 semester for the son "who [was] a qualified student with a disability." The letter stated: "This recommended accommodation is determined by the assigned DRC disability access consultant and based on qualifying disability documentation. This accommodation will be evaluated and recommended on a semester by semester basis."

A-0901-19

Plaintiff asserted defendant misinterpreted the relevant PSA provisions. She referenced paragraphs 6.3 and 7.1B from the PSA, contending they were limited by certain circumstances, including a child's disability. Plaintiff argued because the PSA expressly contemplated deferment of emancipation in the event of a disability, the son should not be deemed emancipated because he had not completed college due to his disability.

In her cross-motion, plaintiff requested other forms of relief not pertinent to this appeal, as well as counsel fees, contending defendant's motion to deem their son emancipated was made in bad faith. According to plaintiff, in addition to the fact that defendant had only paid for three years of college at the time he filed his motion, he was also well aware of their son's disability.

In defendant's reply certification, he asserted that plaintiff wanted their son to remain in college in Arizona because of their contentious relationship. He stated that plaintiff and the son had a history of confrontation that had resulted in the police forcefully removing him from her home and plaintiff locking him out. He attached text and email exchanges from both plaintiff and the son documenting their dislike for each other. In the messages, plaintiff informed defendant she did not want their son to live with her and the son said there was "absolutely no possibility of me staying in NJ." Defendant also noted

plaintiff had been living with her boyfriend for several years and this was an additional motivation for her to keep the son living in Arizona because he did not get along with her boyfriend.

Defendant maintained the son's bad grades were due to his drug use and not to any mental health issues. According to defendant, the son was sent to therapeutic boarding school because he was using drugs regularly and failing classes at his prep school and plaintiff could no longer deal with his drug use or violent behavior. Defendant described instances where the son stole money and credit cards from him, plaintiff, and his younger brothers to support his drug habit. Defendant also stated the son had told him he was selling drugs while at school.

Defendant questioned the university's recent decision to permit the son to continue with a reduced course load. According to defendant, plaintiff's efforts to prove the son is only capable of a reduced full-time course load are disingenuous because she only pursued them once he moved to emancipate the son. Defendant stated he was informed by the DRC that the son was not required to produce information from a medical professional to be considered disabled and receive accommodations. Defendant also noted this same individual informed him she had never seen a Full-Time Enrollment Equivalency

9

Recommendation Form issued on behalf of a student. Defendant attached his insurance statements from June 14, 2018 through July 23, 2019 to demonstrate that, despite plaintiff's representations regarding their son's mental health, there was not a single charge for any therapist or psychiatric treatment. While defendant recognized that seeking such accommodations would have been appropriate when the son started college, after three years of poor academic performance, defendant contended plaintiff only pursued this course of action for the purpose of the litigation.

During oral argument in September 2019 on the parties' motions, plaintiff's counsel made representations to the court that plaintiff had copied defendant on the email correspondence she had with Arizona State University regarding the son's alleged disability, and that a doctor had submitted medical records to the college. Defense counsel responded that plaintiff had not included any emails or medical records in her submissions to the court. She only provided the two DRC letters.

When plaintiff's counsel offered to take testimony from his client about the issue, the judge responded:

> I'll take everything that you argue here for what it's worth. . . . I am going to rely on the papers. I mean I'm sure in all likelihood this issue isn't going to go away

10

after today either.  So if you want to submit those proofs on the next application, you're free to do so. . . .

In an oral decision issued at the close of argument, the judge denied defendant's application for the son's emancipation, stating:

> [U]nfortunately, the [c]ourt has to determine th[e] [emancipation] issue on the documents that are presented before the [c]ourt.  And while [the son] clearly has struggled with his college education the agreement doesn't require him to perform at any particular level.  It only requires that he be enrolled full time at a college and he is enrolled at ASU.
>
> The documents that have been submitted by . . . plaintiff regarding his disability, while defendant says they're hearsay, they do appear to be legitimate.  I . . . don't know if there's any proof that this is somehow fabricated or fraudulent.  And the agreement does talk about a disability or an illness extending [the son's] schooling.
>
> Now, I don't know what ASU's criteria is to determine that a student has a disability.  But they have determined that [the son] does qualify as a student with a disability and he is, therefore, able to have a full time equivalency enrollment as opposed to basing it purely on the number of credits.
>
> So, although[] he is taking fewer than twelve credits it is the equivalent based upon his disability of a full time enrollment.
>
> So with respect to the terms of the agreement, not withstanding the fact that it has been demonstrated from the parties' submissions that [their son] may not be the student who's always in the library studying as

11

opposed to doing what he's doing[,] he does meet the criteria of a full time enrolled student in a college. And, therefore, there is no emancipation presented . . . .

. . . .

So based upon that[,] . . . defendant's motion to deem . . . [the son] as emancipated is denied. The [PSA] appended to the final judgment defines the circumstances under which the children of [the] marriage are deemed emancipated.

. . . .

Under the terms of the PSA an emancipating event has not occurred. The child has attended college on a continuous basis since Fall [] 2016. And currently has a cumulative GPA of 2.54.

Plaintiff states the child suffers from [OCD] and anxiety. Plaintiff has provided an undated letter from Arizona State University [DRC] offering accommodations including full time equivalency for the child's illness or disabilities.

Plaintiff[] also[] offers a full time enrollment equivalency recommendation form dated July 10[], 2019 recommending a reduced course load for the child of [nine] hours for the Fall 2019 semester. The child is currently [twenty-one] years of age and will be attending ASU for the Fall semester with a reduced course load of . . . only [nine] credits. The child is attending school full time and on a continuous basis with an accommodation for illness or disabilities and, therefore, is not emancipated.

The court also awarded plaintiff $5000 in counsel fees "in connection with the cost of these applications. . . . [D]efendant is responsible for these counsel fees because of his failure to adhere to previous court order[s]." The judge later added that he found defendant's position "with respect to the application to emancipate was not reasonable."

On appeal, defendant asserts the trial court erred in denying his application to emancipate the son. He contends the court should have provided the opportunity for discovery and a plenary hearing "to resolve the material factual disputes relevant to the issues of emancipation and college contribution." In addition, defendant challenges the award of attorney's fees to plaintiff as unsupported by the evidential record. And, defendant states, that because the Family Part judge made credibility determinations, the case should be assigned to a different judge on remand.

We defer to family court fact findings "'when supported by adequate, substantial, credible evidence.'" Fattore v. Fattore, 458 N.J. Super. 75, 83 (App. Div. 2019) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Where there is "satisfactory evidentiary support for the trial court's findings . . . [we] should not disturb the result." Llewelyn v. Shewchuk, 440 N.J. Super. 207, 213 (App. Div. 2015) (citing Beck v. Beck, 86 N.J. 480, 496 (1981)).

13

Here, defendant seeks to enforce the "emancipation" provisions of the parties' PSA. "Interpretation and construction of a contract is a matter of law for the court subject to de novo review." Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998) (citing Bradford v. Kupper Assocs., 283 N.J. Super. 556, 583 (App. Div. 1995)).

"Marital agreements . . . are approached with a predisposition in favor of their validity and enforceability." Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995) (citing Petersen v. Petersen, 85 N.J. 638, 642 (1981)). "The basic contractual nature of matrimonial agreements has long been recognized." Pacifico v. Pacifico, 190 N.J. 258, 265-66 (2007) (citing Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995)).

"The polestar of [contract] construction is the intention of the parties. . . ." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953). "The starting point in ascertaining that intent is the language of the contract." Commc'ns Workers of Am., Local 1087 v. Monmouth Cnty. Bd. of Soc. Servs., 96 N.J. 442, 452 (1984) (citation omitted). Where there is ambiguity in the parties' contract, a plenary hearing is necessary "to discern the intent of the parties at the time the agreement was entered and to implement that intent." Quinn v. Quinn, 225 N.J. 34, 45 (2016) (citing Pacifico, 190 N.J. at 267).

Paragraph 7.1B of the PSA provides: "[A]n emancipation event shall occur or be deemed to have occurred upon . . . [t]he completion of undergraduate college education, but in no event beyond the date on which the child reaches age [twenty-three] unless completion of the college education is delayed by injury, illness or disability. . . ." Paragraph 7.1G provides:

> Notwithstanding anything contained in [paragraph 7.1A] above, an emancipation event shall be deemed deferred beyond the twenty-second birthday of the child only if and so long as the child pursues college education with reasonable diligence and on a normally continuous basis. In no event shall emancipation be delayed beyond the twenty-third birthday of the child unless the delay is caused by the injury, illness or disability of the child.

Read together, these paragraphs set forth the following requirements: Emancipation occurs: at age twenty-two, unless the child pursues a college education with reasonable diligence on a normally continuous basis; at college graduation; or at age twenty-three, unless the completion of college studies was delayed by injury, illness or disability. Therefore, the earliest date emancipation may occur is when a child who has not pursued college with reasonable diligence on a normally continuous basis turns twenty-two. Although it was certainly arguable that the son had not pursued his studies with reasonable diligence or on a normally continuous basis, he was only twenty-one years old when

15

A-0901-19

defendant filed his application. Therefore, there were no grounds for emancipation at that time under the specific language of the PSA.

Defendant urges an interpretation of Paragraph 7.1G that allows him to seek emancipation whenever a child fails to pursue college with reasonable diligence and on a normally continuous basis. But this interpretation would allow defendant to seek emancipation if these circumstances occurred in the child's freshman year.

It is not uncommon for some students to begin college without reasonable diligence and then get on track to graduate on time or shortly thereafter. Because paragraph 7.1B extends the graduation emancipation event to age twenty-three, it appears the parties recognized an allowance of additional time might be necessary in the event a child did not finish college in four years. For these reasons, the construction that a child attending college had to be at least twenty-two-years old before emancipation could occur "appears to be in accord with justice and common sense and the probable intention of the parties." Krosnowski v. Krosnowski, 22 N.J. 376, 386-87 (1956) (citations and quotation marks omitted).

In denying defendant's application for emancipation, the trial court found plaintiff had established the son had a disability sufficient to delay his

emancipation. We disagree. On the scant record provided to the court – two unsigned hearsay documents from the college – it was a misapplication of discretion to determine, without a deeper factual inquiry and evidential substantiation, that the son had a disability envisioned by the parties under the PSA and to require the parties to pay all college-related expenses for an indefinite period.

Nevertheless, because the PSA did not permit the emancipation of a child prior to age twenty-two, we agree defendant's application was properly denied. "A trial court judgment that reaches the proper conclusion must be affirmed even if it is based on the wrong reasoning." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)).

However, the son is now twenty-three years old. And, under the PSA, his emancipation can only be deferred if the delay is caused by an injury, illness, or disability. Plaintiff asserted before the Family Part and this court that the son has been diagnosed with OCD, which she contends is a qualifying disability and a sufficient condition to forestall emancipation and require defendant (and herself) to continue footing the son's college tuition bills, housing, and all other related expenses.

A-0901-19

During oral argument before this court, counsel and plaintiff represented that the son expects to complete eighty-six college credits when the current semester ends in May 2021 – after attending the university for five years. If he continues to take only nine credits per semester, he will not graduate for another three years.

Plaintiff did not present any records or documentation to the Family Court to support her contention that the son is sufficiently disabled to defer his emancipation. The Family Part judge acknowledged he did not know what the DRC considered a disability. There was no medical expert who opined for the court whether the son is unable to complete more than nine credits in a semester.

We disagree that the PSA was so clear on its face that the trial court could determine as a matter of law that the parties' son was disabled to avoid emancipation. An unsigned hearsay document from a college employee is not sufficient to support a finding that the son is disabled as the parties intended under the PSA. Indeed, there is no evidence that the son did not attain his high school degree in the usual four years. Without any information, we cannot know whether the son's abysmal prolonged college record is related to a mental health or medical issue, or just a lack of desire or interest to pursue and complete a college education.

A-0901-19

Therefore, we affirm the order denying emancipation. However, we remand to the trial court for a plenary hearing to determine whether the son should be emancipated retroactively effective as of his twenty-second birthday or another subsequent date. As stated, the son cannot be deemed emancipated earlier than his twenty-second birthday.

Because the Family Part judge made credibility determinations on the original application, on remand, a different judge shall be assigned to handle the case. We do so as a prophylactic measure without any criticism of the judge. N.J. Div. of Youth & Fam. Servs. v. A.W., 103 N.J. 591, 617 (1986). The judge should conference the case with the parties and counsel to attempt to achieve an agreement in light of the time that has passed. This conference should take place within thirty days of the date of this order.

Defendant may renew his request for all documentation provided to the college to support plaintiff's request for the categorization of the son as "disabled" and for a diminution of required credits. As the DRC letters advised, a student's status would be reviewed each semester; plaintiff must produce all of the information she provided to the school for each subsequent semester as well. Of course, it is within the court's discretion to order the exchange of any other documents or to order mental health or physical examinations if

A-0901-19

appropriate. Any hearing should be scheduled and completed before July 15, 2021 so the parties and their son will know his status before the fall semester.

As stated, the trial court awarded plaintiff $5000 in counsel fees at the close of its oral decision. It is unclear on what basis the award was made. In addition, the court failed to analyze the required statutory factors and did not proffer any reason for its conclusion that defendant's argument regarding emancipation was unreasonable. Therefore, we reverse the award of fees and instruct the court on remand to consider the request anew, along with any applications concerning appellate fees. See R. 2:11-4.

"In awarding attorney's fees, N.J.S.A. 2A:34-23 requires a court 'to consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party.'" Mani v. Mani, 183 N.J. 70, 94-94 (2005). Rule 5:3-5(c) sets forth nine factors for courts to consider when determining whether to award attorney fees in a family action. "In considering an award of counsel fees, the judge must comply with [Rule] 1:7-4(a) and clearly set forth reasons for the exercise of discretion." Scullion v. State Farm Ins. Co., 345 N.J. Super. 431, 439 (App. Div. 2001) (citing Brewster v. Keystone Ins. Co., 238 N.J. Super. 580, 587 (App. Div. 1990)).

A-0901-19

Initially, the trial court stated it was awarding plaintiff fees because defendant had neither paid the previously-ordered college costs nor the current college costs that had since come due. However, defendant's counsel advised the court that plaintiff's cross-motion did not mention unpaid college expenses and defendant had documented his compliance with the required payments in his reply papers.

Plaintiff conceded that her motion concerned defendant's alleged non-payment of alimony arrears and failure to comply with the life insurance beneficiary designation required by the PSA. But she told the court it could assess fees because defendant was unsuccessful in his motion for emancipation. The court responded: "The . . . basis for my awarding of counsel fees is[] based upon the representation that [defendant] was in arrears[,] which was not challenged, and that the position . . . of the party with respect to the application to emancipate was not reasonable." However, defendant had rebutted plaintiff's arguments in his reply certification supported with documentary evidence.

On remand, after considering the son's emancipation, the Family Part judge must also consider plaintiff's application for counsel fees. In doing so, the judge will consider the factors under N.J.S.A. 2A:34-23 and Rule 5:3-5(c)

and set forth its reasons for any award or its denial as required under <u>Rule</u> 1:7-4(a).

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0901-19