# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2146-24

S.S.,[1]

      Plaintiff-Respondent,

v.

V.S.,

      Defendant-Appellant.

_____

Argued April 16, 2026 – Decided May 19, 2026

Before Judges Marczyk and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-0610-25.

Stephanie Palo Solop argued the cause for appellant (Solop Bondarowicz & Gargulinski, LLC, attorneys; Stephanie Palo Solop, on the briefs).

Bonnie C. Frost argued the cause for respondent (Einhorn Barbarito Frost Botwinick Nunn & Musmanno PC, attorneys; Ryan Magee and Scott Weingart, on the brief).

---

[1] We use initials to protect the identities of the parties. R. 1:38-3(d)(10).

PER CURIAM

Defendant V.S. appeals from the Family Part's February 12, 2025 final restraining order (FRO) entered against him and in favor of plaintiff S.S. under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Following our review of the record and applicable legal principles, we affirm.

I.

The parties were married in 2023 and have one son, born in March 2024. They resided together in Harrison, but defendant also maintained an apartment in Texas due to his work. Plaintiff obtained a temporary restraining order (TRO) in August 2024, alleging harassment. In February 2025, the court conducted a two-day trial. We derive the following facts from the record.

Plaintiff testified regarding a history of domestic violence incidents that occurred in December 2023 and March 2024. She recounted that on December 23, 2023, when she was six months pregnant, after an argument over defendant's text messages with his mother, defendant became "aggressive," grabbing her by the neck and pushing her from the living room into the bedroom, where he struck her multiple times in the chest, arm, and "upper part of [her] body." Defendant left the bedroom only to return shortly thereafter and struck plaintiff again. Plaintiff stated defendant "just kept standing in front of [her] . . . asserting

A-2146-24

himself and threatening" her. Defendant conceded he put his hand around her neck and struck her but claimed he had acted in self-defense after plaintiff pushed him. Video footage of the incident was offered and admitted into evidence without objection.

On March 4, 2024—the day before plaintiff's scheduled induced labor—the parties got into another argument in their apartment. Plaintiff testified defendant kicked a ceramic mug toward her, pushed her onto a couch, and struck her several times. Video footage of the incident corroborated plaintiff's testimony defendant hit her numerous times. Moreover, defendant admitted to striking plaintiff "multiple times," but he contended his actions were in response to plaintiff's provocations and threats of self-harm.

The parties' son was born a few days later. On March 17, three days after plaintiff returned home from the hospital, the parties had an argument concerning the child's middle name. According to plaintiff, while she was holding her son, defendant twisted her arm behind her back and threatened to kill her. During the altercation, plaintiff's father intervened to prevent the child from being dropped. Defendant denied twisting plaintiff's arm, claiming he only held plaintiff's hand after she approached him in a threatening manner.

A-2146-24

Defendant returned to Texas for work on April 9, 2024, and did not see plaintiff or his son again until his return to New Jersey in July. On July 12, the parties and their parents met in the lounge of a hotel near plaintiff's apartment so defendant and his family could see the baby. Plaintiff wanted the meeting in a public place because it felt safer. She testified defendant's mother "rushed" toward her during the gathering, while she was holding her baby. Defendant then followed her around while she was holding the baby, who had started to cry, causing plaintiff to fear for her safety. Plaintiff asserted defendant became "aggressive" and "intimidating," walking toward her, pushing her, and "asserting" himself. She stated he tried to snatch the infant from her. Defendant denied he was aggressive or tried to seize the child, testifying he simply wanted to hold his son.

Defendant filed for divorce on July 9, 2024, and served plaintiff with the complaint and summons on July 18, 2024. He testified he decided to file for divorce after the contentious family meeting with plaintiff on July 12, 2024. On cross-examination, defendant maintained although the divorce was filed before the July 12 event, he believed the process was not initiated until after the meeting.

4

On August 19, 2024, plaintiff received a text message from defendant regarding gifts from defendant's family for their son. Plaintiff testified the message made her feel threatened and fearful because of the parties' history and defendant's lack of prior contact. She was "scared that [defendant] would just randomly show up at [her] door, out of nowhere." She stated that she did not view the message as a good faith communication, but rather, as "scary," and that fear caused her to seek a restraining order. Defendant testified his contact with plaintiff was not intended to harass her but was motivated by his desire to see his child and to extend well wishes related to an Indian holiday.

Following the trial, the court rendered an oral opinion. It found plaintiff credible, explaining her "recitation and testimony . . . fulfill[ed] the preponderance of the evidence" and emphasizing the "two very . . . strong, . . . very emotional videos that were shown several times in th[e] [c]ourtroom." Conversely, the court determined defendant's testimony was not credible. It found he displayed a "pattern of behavior on the stand . . . of aggression," and "it didn't seem as if . . . [he] could remain under control." The court further found defendant gave "very little testimony related to any acknowledgment of . . . striking . . . plaintiff," gave "hesitant admission that there was any striking,"

and made statements that were inconsistent with both the testimony and the objective evidence.

Applying the two-prong standard outlined in Silver v. Silver,[2] the court emphasized the alleged predicate acts "must be evaluated in light of the previous history of violence between the parties." It found plaintiff established defendant committed predicate acts of harassment under N.J.S.A. 2C:33-4(a), (b), and (c) on July 12, 2024, and August 19, 2024. The court specified, "[a]lthough [the August 19, 2024 act] was just . . . a text, it d[id] satisfy [the preponderance standard] because it's . . . construed in conjunction with [the July 12, 2024 act], and in light of the prior alleged history of domestic violence." It determined defendant's "purpose [was] to harass," specifically finding his "purpose was not self-defense," and an FRO was necessary, citing plaintiff's "very credible" testimony, her "genuine[] fear[] for her safety," the "immediate danger to . . . plaintiff," and the seriousness and pattern of defendant's conduct, including his prior acts of aggression and use of physical force. Accordingly, the court entered an FRO against defendant on February 12, 2025.

---

[2] 387 N.J. Super. 112 (App. Div. 2006).

A-2146-24

## II.

Before us, defendant argues the trial court erred in finding he committed an act of domestic violence, specifically harassment. He maintains the court abused its discretion in determining plaintiff needed an FRO. He also contends it erred in concluding plaintiff's testimony was credible, considering her repeated refusal to directly answer questions and the contradictions in her testimony. Defendant further asserts the court did not adequately maintain the record, inhibiting a fair and complete review and warranting reversal.

Our scope of review is limited when considering an FRO issued by the Family Part. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). That is because "we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Deference is particularly appropriate where the evidence is largely testimonial and hinges on a court's ability to make credibility assessments. Id. at 412. We review de novo the court's conclusions of law. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010).

A-2146-24

The entry of an FRO requires the trial court to make certain findings pursuant to a two-step analysis. See Silver, 387 N.J. Super. at 125-27. Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citation reformatted). The trial court should make this determination "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402) (internal quotation marks omitted). Secondly, the court must determine "whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)([7]),[3] to protect the victim from an immediate danger or to

_____

[3] The seven factors are:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment[,] and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time[,] the protection of the victim's safety;

prevent further abuse." Id. at 127 (citations reformatted); see also N.J.S.A. 2C:25-29(b) ("In proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse."); J.D. v. M.D.F., 207 N.J. 458, 476 (2011).

When harassment is the alleged predicate act, the court must find not only that the underlying conduct occurred but also that the defendant acted with the "purpose to harass." See J.D., 207 N.J. at 478; State v. Hoffman, 149 N.J. 564, 576-77 (1997). Under N.J.S.A. 2C:33-4, harassment occurs when a person, with purpose to harass another:

> (a) Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> (b) Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

---

> (6) The existence of a verifiable order of protection from another jurisdiction; and
>
> (7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity, or human rights . . . .
>
> [N.J.S.A. 2C:25-29(a)(1)-(7).]

A-2146-24

> (c)    Engages in any other course of alarming conduct
> or of repeatedly committed acts with purpose to alarm
> or seriously annoy such other person.

Mere awareness or knowledge that one's conduct might annoy is not sufficient. See Hoffman, 149 N.J. at 580-81 (explaining "annoyance" under subsection (a) "means to disturb, irritate, or bother," and "serious annoyance [or alarm] under subsection (c) means to weary, worry, trouble, or offend"); J.D., 207 N.J. at 477-78. This "purpose" may be inferred from the defendant's actions and the context of the parties' relationship, including prior abuse. Cesare, 154 N.J. at 405; State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006).

Here, the court found defendant committed predicate acts of harassment under N.J.S.A. 2C:33-4(a), (b), and (c) based on his aggressive behavior, his attempt to seize the child at the July 12, 2024 family meeting, and his August 19, 2024 text message in the context of his prior abuse.

## A.

Defendant argues the trial court gave undue weight to his prior conduct depicted in plaintiff's video evidence, rather than analyzing the actual facts of the alleged predicate acts. He asserts, when viewed in isolation, neither the July 12 nor August 19, 2024 acts amount to harassment because his intent to harass plaintiff was not established. Defendant contends the law requires proof of both

harassing conduct and an actual "conscious objective" to harass, not merely prior abuse or subjective annoyance. Defendant maintains the August 19 text was benign and sent with well wishes, emphasizing plaintiff had contacted him over twenty times in an attempt to salvage their relationship after she was served with the divorce complaint on July 18. Regarding the July 12 incident, defendant asserts neither plaintiff nor the child were harmed and the court misapplied N.J.S.A. 2C:33-4(b).

We confine our discussion to the July 12, 2024 incident because we conclude the court did not err in finding plaintiff proved defendant committed the predicate act of harassment under N.J.S.A. 2C:33-4(b).[4] Although defendant is correct in asserting a purpose to harass—not mere knowledge of annoyance—is essential to finding a defendant liable for harassment, the trial court appropriately determined he acted with a purpose to harass.

The court found an actual predicate act and not just subjective fear or past abuse. See J.D., 207 N.J. at 487; State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989). It expressly credited plaintiff's testimony and supporting video evidence as establishing, by a preponderance of the evidence, defendant's

---

[4] Because we determine the court did not err in finding defendant harassed plaintiff during the July 12, 2024 incident, we need not address whether the August 19, 2024 text message from defendant constituted harassment.

conduct constituted either an actual or threatened offensive touching under N.J.S.A. 2C:33-4(b) and was intended to alarm or seriously annoy plaintiff under N.J.S.A. 2C:33-4(a) and (c). Purpose to harass may be inferred from context and prior acts even when the predicate incident appears minor in isolation. See Hoffman, 149 N.J. at 577. Consistent with Cesare and Hoffman, the court properly drew on the parties' history and inferred defendant's harassing intent, finding no legitimate justification for his behavior. See 154 N.J. at 405; 149 N.J. at 576-77.

The court considered defendant's July 12, 2024 actions in the hotel lobby—which it found included being aggressive, following plaintiff, pushing her, and trying to "snatch" the infant from plaintiff's hands—in the context of the recent "compelling" video evidence showing defendant repeatedly striking a pregnant plaintiff on two separate occasions, which it characterized as "very violent." The court, as permitted, did not view the evidence of harassment in a vacuum. So too, it did not base its findings solely on the prior acts of domestic violence. As our Supreme Court noted, "[a] history of domestic violence may serve to give content to otherwise ambiguous behavior and support entry of a restraining order." J.D., 207 N.J. at 483. We conclude there was ample evidence

in the record to support the court's conclusion defendant acted with the requisite purpose to harass plaintiff.

## B.

Defendant argues there was no basis for the court's entry of an FRO against him. He contends the video evidence "show[ed] only a portion of the disputes" between the parties, plaintiff did not require medical attention, and her delay in seeking a TRO demonstrated she did not fear him. He claims there was no credible evidence showing an ongoing or immediate danger to plaintiff, emphasizing the parties were physically separated as he had moved to another state and filed for divorce. He also challenges the court's credibility findings, citing plaintiff's contradictory explanations for why she did not contact the police about his alleged threats and noting the court had to admonish her for evading questions. Defendant further asserts the court failed to find an FRO was necessary because of an immediate danger to plaintiff under N.J.S.A. 2C:25-29(a)(2) and did not address the financial circumstances of the parties, the best interests of the child, or the existence of any out-of-state orders of protection.

We affirm the trial court's decision under prong two of Silver substantially for the reasons set forth in its comprehensive oral opinion and add the following.

13

Contrary to defendant's argument the court did not address the immediate danger to plaintiff, we note the trial court stated: "[The court] do[es] find . . . plaintiff's testimony [was] very credible, that she genuinely fears for her safety. I[t] find[s] . . . under N.J.S.A. 2C:25-29(a)(2) there is an immediate danger to . . . plaintiff." In finding plaintiff's need for an FRO, it emphasized: (1) defendant's repeated and severe physical abuse, including grabbing plaintiff's neck and making threats, which the video evidence corroborated; (2) defendant's ongoing pattern of coercive control and alarming behavior; (3) plaintiff's credible, genuine fear for her safety; and (4) any delay in seeking relief or distance between the parties did not undermine plaintiff's need for protection. The court did not rely on plaintiff's subjective fear alone. Rather, after evaluating the evidence— including objective corroboration and a pattern of escalating behavior—it found the risk to plaintiff to be objectively real and ongoing.[5] See Cesare, 154 N.J. at 411-12.

Thus, there was substantial credible evidence in the record establishing the issuance of an FRO was necessary "to protect . . . [plaintiff] from an

---

[5] We also observe the court did address parenting time with the parties' son. The financial circumstances of the parties would have no bearing on the entry of the FRO, and there was no evidence for the court to consider regarding any out-of-state orders of protection.

immediate danger or to prevent further abuse." See Silver, 387 N.J. Super. at 127. We discern no basis to disturb the court's conclusion regarding the second prong of Silver. See Cesare, 154 N.J. at 411-12.

We are likewise unpersuaded by defendant's arguments we should reject the trial court's credibility findings. The court acknowledged "there w[ere] some rough edge[s]" to plaintiff's testimony and she required some "guidance" to respond to questions. However, it found those issues "d[id] not take away from her credibility and her recitation of the facts, especially in light of the two videos" depicting defendant striking plaintiff. In short, the court concluded plaintiff's testimony was, nonetheless, "very credible." Therefore, any minor contradictions or moments of non-responsiveness during her testimony did not undermine the court's credibility findings.

## C.

Finally, defendant asserts the appellate record is incomplete, citing the omission of the divorce complaint despite its admission into evidence and the presence of page annotations on certain admitted exhibits, suggesting these irregularities interfere with our review of the record.

Generally, appellate review is confined to the trial court record, which includes admitted pleadings, orders, transcripts, and evidence. R. 2:5-4(a);

15

Friedman v. Martinez, 242 N.J. 449, 475 (2020).  A record is deemed deficient only when missing or inadequate material so impairs meaningful review that this court cannot perform its function, and reconstruction or supplementation cannot cure the defect.  Kent v. Cnty. of Hudson, 97 N.J. Super. 90, 98 (App. Div. 1967); see also In re State & Sch. Emps. Health Benefits Cmm'ns' Implementation of Yucht, 233 N.J. 267, 280 (2018).

To warrant reversal or remand, a party must demonstrate:  (1) an exercise of due diligence in attempting to cure the omission or supplement the record; and (2) actual, articulable prejudice from the incompleteness or defect.  State v. Bishop, 350 N.J. Super. 335, 347 (App. Div. 2002); Kent, 97 N.J. Super. at 98.  Generalized complaints or speculative assertions of deficiency or prejudice do not meet this standard.  See In re Yucht, 233 N.J. at 280; Bishop, 350 N.J. Super. at 347.

Here, defendant did not raise any objection regarding the completeness of the record before the trial court, and he did not seek to supplement, reconstruct, or correct the record as required by Rule 2:5-5(a).  Further, defendant fails to identify any specific, material prejudice to him based on the record before us.  Because the record is sufficient to permit meaningful appellate review, there is no basis for reversal or remand.  See Kent, 97 N.J. Super. at 98; Scullion v. State

16

<u>Farm Ins. Co.</u>, 345 N.J. Super. 431, 439 (App. Div. 2001) (noting only where a critical omission precludes meaningful review does remand become necessary).

To the extent we have not addressed any of defendant's other arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2146-24